# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN G. PERLMAN, REARDEN LLC, and ARTEMIS NETWORKS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | C.A. No. N19C-07-235 PRW |
| v. | ) | CCLD |
| | ) ) | |
| VOX MEDIA, INC., | ) ) | |
| Defendant. | ) ) | |

Date Submitted: April 7, 2020
Date Decided: June 24, 2020

## OPINION AND ORDER

*Upon Defendant Vox Media, Inc.'s Motion for Summary Judgment*
**GRANTED.**

Matthew E. Fischer, Esquire (argued), Jonathan A. Choa, Esquire, and Jacqueline A. Rogers, Esquire, POTTER ANDERSON CORROON, LLP, Wilmington, Delaware, *Attorneys for Plaintiffs Stephen G. Perlman, Rearden LLC, and Artemis Networks, LLC.*

Peter Frattarelli, Esquire, ARCHER & GREINER, P.C., Wilmington, Delaware; James Rosenfeld, Esquire (argued), Jeremy A. Chase, Esquire, and Meredith I. Santana, Esquire, DAVIS WRIGHT TREMAINE, LLP, New York, New York, *Attorneys for Defendant Vox Media, Inc.*

**WALLACE, J.**

Entrepreneur Stephen G. Perlman is the President and Chief Executive Officer of Artemis Networks LLC and Rearden LLC, who collectively bring this action against Vox Media, Inc., alleging that in news articles published in 2012 and 2014 Vox defamed Perlman personally and by extension Artemis and Rearden through the online publication of false claims relating to one of Perlman's previous commercial endeavors, OnLive, Inc.

## I. PROCEDURAL HISTORY

Perlman, Rearden, and Artemis (who will, at times, be referred to collectively as "Plaintiffs") first filed this action in the Court of Chancery in August 2014.[1] The complaint survived Vox's Motion to Dismiss,[2] but on summary judgment the Court of Chancery found an absence of equitable subject matter jurisdiction.[3] The case was then transferred to this Court.[4]

Vox has submitted its instant Motion for Summary Judgment here. And Perlman, Rearden, and Artemis have responded.

---

[1]   Complaint, *Perlman v. Vox Media, Inc.*, Civ. Act. No. 10046-VCS (Del. Ch. Aug. 18, 2014).

[2]   *Perlman v. Vox Media, Inc.*, 2015 WL 5724838, at *20 (Del. Ch. Sep. 30, 2015) ("*Perlman I*").

[3]   *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *6 (Del. Ch. Jun. 27, 2019) ("*Perlman II*").

[4]   *See* DEL. CODE ANN. tit 10, § 1902 (2018).

-2-

## II. APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate when the record shows no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[5] The record is viewed in the light most favorable to the non-movant,[6] as the purpose of summary judgment is to determine whether genuine issues of material fact exist rather than to resolve them.[7] The moving party has the burden of proof to show that there are no genuine issues of material fact.[8] If a motion is properly supported, the burden shifts to the non-moving party to establish the existence of material issues of fact.[9]

Questions of law previously decided in this case before the Court of Chancery generally remain in force due to the "law of the case" doctrine. Under that doctrine, once a specific legal principle is applied to the facts of a case that ruling is applied so long as the facts remain constant throughout the subsequent course of the same

---

[5]   *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing Super. Ct. Civ. R. 56(c)).

[6]   *Jones v. Crawford*, 1 A.3d 299, 301–02 (Del. 2010).

[7]   *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

[8]   *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[9]   *Id.* at 681.

litigation[10] absent a compelling reason to reopen it.[11] As Delaware has multiple state trial courts that may exercise overlapping forms of jurisdiction over a single lengthy case, courtesy and comity require that exceptions to this rule be entertained "only in extraordinary circumstances."[12]

## III. FACTUAL BACKGROUND

Perlman, through Rearden, formed OnLive in 2003, and it began operating as a remote online game streaming service in 2007.[13] OnLive ran into financial difficulty,[14] and on August 17, 2012, its assets were acquired by an assignee and then transferred to OL2, Inc. ("OL2") which continued doing business under the trade name "OnLive."[15] Perlman had no involvement with OL2 at any time.[16]

On August 19, 2012, a Vox website named "The Verge" published an article regarding OnLive ("August 19th Article").[17] The August 19th Article discussed this

---

[10] *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990).

[11] *Hambleton v. Christiana Care Health Services, Inc.*, 2001 WL 258481, at *2 (Del. Super. Ct. Feb. 2, 2001).

[12] *Frank G.W. v. Carol M.W.*, 457 A.2d 715, 719 (Del. 1983).

[13] Super. Ct. Compl. ¶ 16.

[14] *Id.* ¶ 20.

[15] *Id.* ¶ 21.

[16] *Id.* ¶ 22.

[17] Transmittal Aff. of Jacqueline A. Rogers (D.I. 41) [Hereinafter "Rogers Aff."] ex 4.

restructuring, and quoted a named source's allegation that OnLive's patents were held by Rearden instead of OnLive.[18] Among other things, the August 19th Article accused Perlman and Rearden of using this structure to wrongfully exclude the value of OnLive's technology from the entity itself, capturing the value for Perlman at the expense of employees with equity stakes.[19]

On the same day, OL2 contacted Vox to dispute the factual accuracy of many of the assertions in the August 19th Article, including pointing out to Vox that public records showed that the patents in question were owned by OnLive.[20] Vox entirely re-wrote the article, aside from the first four sentences, and replaced it on the same day ("Revised Article").[21] Vox included a correction notice stating: "This story has been heavily modified from its original version, which contained inaccuracies."[22] It is undisputed the original August 19th Article is not available from Vox,[23] though

---

[18]  *Id.*

[19]  *Id.*

[20]  Super. Ct. Compl. ¶ 36.

[21]  *Id.* ¶ 37.

[22]  *Id.* ¶ 40.

[23]  *Id.* ¶ 77.

other entities continue to repeat the substance of its content.[24] Plaintiffs do not allege that there are any factual inaccuracies in the Revised Article.

Nine days later, on August 28, 2012, Vox published another article ("August 28th Article") reporting on the OnLive restructuring.[25] Plaintiffs say there are a number of factual inaccuracies in the August 28th Article.[26] Many of these take the form of quotes from unnamed OnLive employees.[27] Vox and its employees promoted the article through a number of social media accounts on multiple platforms.[28]

A year and a half later, on February 19, 2014, Vox published an article about Artemis ("February 2014 Article").[29] The article discusses Perlman as "the creator of the **defunct game-streaming service OnLive**."[30] The bold text is in the original,

---

[24] *Id.* ¶¶ 79–80. These other speakers include commenters on Vox websites. Rogers Aff. ex. 27. Federal law "protects websites from liability under state or local law for material posted on their websites by someone else"—website comments sections are the prototypical example. *See Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (citing 47 U.S.C. § 230(e)(3)), *cert. denied*, 2020 WL 2515458 (May 18, 2020).

[25] Rogers Aff. ex 21.

[26] Super Ct. Compl. ¶ 56.

[27] *Id.*

[28] Rogers Aff. ex. 23.

[29] Rogers Aff. ex. 37.

[30] *Id.*

and corresponds to a hyperlink leading to the August 28th Article.[31] The February 2014 Article also contained the sentence "OnLive, like Artemis, seemed impossibly ambitious when it first debuted, delivered on its initial promise, but the company failed to turn its ambition into profit."[32] Perlman, Rearden, and Artemis identify these sentences as, respectively, the "Defunct Statement" and "Comparison Statement."

## IV. PARTIES' CONTENTIONS

Vox's position is that to the extent that the 2014 Article is of and concerning Plaintiffs, it is substantially true, and hence not actionable. Vox further argues that California's one-year statute of limitations applies and bars any defamation claim related to the 2012 articles.[33]

Perlman, Rearden, and Artemis argue that the 2014 Article is false and defamatory, and hence actionable. They further argue that, because the 2014 Article coupled defamatory statements with hyperlinks to the 2012 Articles, the 2014 Article

---

[31] A hyperlink is a citation/navigation method possible only in electronic media whereby clicking on the text or image retrieves ("links to") the reference. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1374 (Fed. Cir. 2011).

[32] Rogers Aff. ex 37.

[33] Vox Op. Br. in Supp. Of Def. Mot. for Summ. J. at 2 (D.I. 23) [Hereinafter "Vox. Br."].

constituted a republication of the 2014 Articles, restarting the limitations period.[34]

Plaintiffs additionally argue that Delaware's two-year limitations period applies.[35]

The Reporters Committee for Freedom of the Press, joined by twenty-three publishers, journalism organizations, and media companies ("*Amici*") submitted a brief urging the Court to reject Plaintiffs' theory of republication.[36]

## V. DISCUSSION

### A. CALIFORNIA LAW APPLIES TO ALL PLAINTIFFS' CLAIMS.

When conducting choice of law analyses, Delaware courts generally rely on the Restatement (Second) of Conflict of Laws,[37] which in internet-published defamations points to the law of the plaintiff's domicile.[38]

Applying the Restatement standard, the Court of Chancery found that Perlman is a California domiciliary, that Rearden has its principal place of business in California, and so that state's law applied as to them.[39] Plaintiffs argue that, as the

---

[34]   *Id.* at 26, 38.

[35]   Plfs. Answering Br. in Opp'n. to Def. Mot. for Summ. J. at 24 (D.I. 41) [Hereinafter "Plfs. Br."].

[36]   *See generally* Mot. of *Amici* for Leave to File, ex. 1 (D.I. 27) [Hereinafter "*Amicus* Br."].

[37]   *Smith v. Delaware State University*, 47 A.3d 472, 480 (Del. 2012).

[38]   *Schmidt v. Washington Newspaper Pub. Co., LLC*, 2019 WL 4785560, *2 (Del. Super. Ct. Sept. 30, 2019) (citing Restatement (Second) of Conflict of Laws § 150 (Am. Law Inst. 1971)).

[39]   *Perlman I* at *11.

gravamen of the alleged defamation concerns the behavior of Perlman as a fiduciary of Delaware companies, the relevant inquiry should be cabined towards the state of formation, and that a material question of fact exists as to whether Delaware law applies.[40] The Court of Chancery considered and rejected this argument.[41] Plaintiffs cite neither facts that have emerged since the Court of Chancery made these determinations, nor any extraordinary basis to depart from the law of the case.[42]

Plaintiffs concede Perlman is the sole owner of Rearden, which is sole owner of Artemis,[43] and that Artemis is a "project within Rearden" with "no separate office" and "does not have any employees."[44] Its Delaware address is "just a service address, not a physical office."[45] Artemis is therefore also necessarily a California entity. All Plaintiffs' claims thus arise under California law.

---

[40] Plfs. Br. at 24–25.

[41] *Perlman I*, *11 (citing *Aoki v. Benihana, Inc.*, 839 F.Supp.2d 759, 764–65 (D. Del. 2012)).

[42] *See E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 n.3 (Del. 1985) (quoting *New York Tr. Co. v. Riley*, 16 A.2d 772, 783 (Del. 1940)) ("The ultimate fact in issue is domicile. This is a question of law based on facts.").

[43] Super Ct. Compl. ¶¶ 13, 14.

[44] Vox. Br. ex. 17a at 13.

[45] *Id.*

## B. THE NEW CONTENT IN THE FEBRUARY 2014 ARTICLE IS NOT DEFAMATORY.

California defines defamation as (a) a publication that is (b) false (c) defamatory and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.[46] The injurious falsehood must also be "of and concerning" the defamation plaintiff.[47]

### 1. OnLive was Defunct.

A defunct company is one "whose registration with the state has been canceled" or a "business that has terminated all operations and been dissolved."[48] As Plaintiffs concede, after the assignment on August 17, 2012, and certainly by the publication of the 2014 Article, OnLive had no assets and no operations.[49] Plaintiffs' own exhibits demonstrate OnLive had permanently ceased paying business taxes,[50] and lost its entity status entirely on March 1, 2014, due to this delinquency.[51]

---

[46] *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007).

[47] *Blatty v. New York Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986); *see also Issa v. Applegate*, 242 Cal.Rptr.3d 809, 820 (Cal. Ct. App. 2019) ("The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff.") (citing *Blatty*).

[48] *Company*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[49] Super. Ct. Compl. ¶ 21; Oral Arg. Tr. at 36.

[50] Rogers Aff. ex. 45.

[51] Rogers Aff. ex. 1.

Plaintiffs thus concede facts that establish the truth of the Defunct Statement as to Onlive. Plaintiffs argue that the Defunct Statement is nevertheless false with respect to OL2, because that entity continued to operate a game streaming service bearing assets, technology, customers, employees, and even the trade name of the former OnLive.[52] Perhaps, but OL2 and OnLive were and are separate entities.[53] And Plaintiffs specifically denied that Perlman was involved with OL2.

When the parties argue multiple interpretations of a statement, whether that statement is reasonably susceptible of the alleged defamatory interpretation is a question for the court.[54] Only if the Court finds that the disputed statement can reasonably bear the defamatory meaning does the question of whether the audience drew the defamatory understanding from it reach the jury.[55] In this inquiry, a court on a motion for summary judgment must determine whether "the false portion" of the publication is capable of bearing the defamatory meaning.[56]

---

[52] Oral Argument Transcript, Feb. 26, 2020, at 38–39 (D.I. 63).

[53] *See McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 107 Cal.Rptr.2d 702, 706–07 (Cal. Ct. App. 2001) (California ordinarily respects the separate corporate identity of asset purchasers); *Sonora Diamond Corp. v. Superior Court*, 99 Cal.Rptr.2d 824, 836 (Cal. Ct. App. 2000) (California ordinarily respects the corporate form).

[54] *MacLeod v. Tribune Pub. Co.*, 343 P.2d 36, 41 (Cal. 1959) (en banc).

[55] *Id.*

[56] *Strong v. Wells Fargo Bank*, 2012 WL 3549730, at *2 (Del. Super. Ct. Jul. 20, 2012).

The Defunct Statement could reasonably bear Plaintiffs' interpretation of referring to both OnLive and OL2. But Plaintiffs concede that OnLive was defunct. So the 'false portion' must be the status of OL2. And a statement about OL2—no matter how defamatory—is not of and concerning Perlman, Rearden, or Artemis and hence is not actionable by any of them. Perhaps OL2 could bring suit over such alleged defamation. But neither Perlman, nor Rearden, nor Artemis can.

## 2. OnLive's Ambition Exceeded its Profitability.

The Comparison Statement contains three factual assertions—(1) at their debut, OnLive and Artemis both appeared "impossibly ambitious," (2) OnLive delivered on the technical promise of that ambition, and (3) OnLive "failed to turn [that] ambition into profit."

To meet the defamatory character element in California, a statement must expose its targets to hatred, contempt, ridicule, obloquy, shunning, or injury in their professions.[57] The first two factual statements—expressing the sentiment that Perlman is a technical visionary with a track record of delivering on the technological promise of his developments—cannot possibly bear such an imputation.

---

[57] *Baker v. Los Angeles Herald Examiner*, 721 P.2d 87, 90 (Cal. 1986); *see also Defamatory*, BLACK'S LAW DICTIONARY (11th ed. 2019) (A statement "tending to harm a person's reputation, usu. by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.").

By Plaintiffs' own admission, OnLive became insolvent and was forced to assign all of its assets to benefit its creditors.[58] Plaintiffs' own claim is that the technology was sufficiently well-designed that the system survived the corporation's insolvency, operating for years until eventually selling its patents to Sony.[59] Those post-assignment revenues necessarily accrued to OL2, not OnLive or Plaintiffs.[60] So Perlman's technology demonstrably outlasted and achieved greater success than the corporate vehicle created to derive profit from it.

## C. Absent Republication Through the February 2014 Article, Claims Based on the Earlier Articles Are Time-barred.

California abides by the "single-publication rule" whereby a cause of action for defamation accrues upon the first general distribution of the publication to the public, irrespective of whether the allegedly defamed party is aware of or secures a copy of the publication.[61] This rule applies to internet publications as well, though they are persistently available, such that the statute of limitations runs from the first

---

[58] Super. Ct. Compl. ¶¶ 20–21.

[59] Plfs. Br. at 5–6.

[60] *See Berg & Berg Enterprises, LLC v. Boyle*, 100 Cal.Rptr.3d 875, 892 (Cal. Ct. App. 2009) ("In an economic sense, when a corporation is solvent, it is the shareholders who are the residual claimants of the corporation's assets and who are the residual risk-bearers.").

[61] *Shively v. Bozanich*, 80 P.3d 676, 684–86 (Cal. 2003).

-13-

posting by which the communication became available to a general audience.[62]

Continued hosting of the communication does not constitute republication.[63]

The Court of Chancery found that California's one-year statute of limitations applied, and that the 2012 articles fell outside it, but declined to dismiss allegations related to those articles at the threshold because Plaintiffs could potentially demonstrate an excuse for the late filing under laches.[64] But this Court cannot consider the equitable doctrine of laches to rescue an untimely suit.[65] No, in this Court, failure to satisfy the statute of limitations is a complete bar to suit.[66]

---

[62] *Traditional Cat Assn., Inc. v. Gilbreath*, 13 Cal.Rptr.3d 353, 361 (Cal. Ct. App. 2004). *See also, Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 (9th Cir. 2011) (Noting that "[a]lthough the California Supreme Court has not addressed the issue, the California Courts of Appeal have uniformly applied the [single-publication] rule to websites.").

[63] *Roberts*, 660 F.3d at 1168.

[64] *Perlman I* at *13. "Laches is an equitable defense based on the maxim that 'equity aids the vigilant, not those who slumber on their rights,'" and is more flexibly defined as "an unreasonable delay in enforcing a right, which causes prejudice to the defendant." *IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 177 (Del. 2011) (citing *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del.1982)).

[65] *Sun Life Assurance Co. of Canada v. Wilmington Trust, Nat'l. Assoc.*, 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018); *Mine Safety Appliances Co. v. AIU Insurance Co.*, 2016 WL 498848, at *12 (Del. Super. Ct. Jan 22, 2016) ("Laches is an equitable defense that is not available in the Superior Court, which is a court of law.").

[66] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 731 (Del. 2020) (citing *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004)). While the Court of Chancery will ordinarily follow the statute of limitations in its laches analysis, "if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute, the Chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it." *IAC*, 26 A.3d at 177–78 (quoting 4 Pom. Eq. Juris. 1441). The Court of Chancery nevertheless applies the statute of limitations by analogy to cases asserting rights cognizable at law over which it exercises concurrent jurisdiction due to a request for equitable

To obtain a new publication date outside of the single-publication rule, a California plaintiff must show a republication, which requires showing "the statement itself is substantively altered or added to, or the website is directed to a new audience."[67] Moving the communication to a new webpage in the same parent site, even with a new URL,[68] does not constitute a new publication or comprise a new accrual date.[69]

Plaintiffs' only asserted basis for a new publication and hence a new accrual date is through the February 2014 Article, which they allege "substantively altered or added to" the August 19th Article, Revised Article, and August 28th Article, and also "directed [them] to a new audience."[70]

---

relief. *Kahn v. Seaboard Corp.*, 625 A.2d 269, 272–73 (Del. Ch. 1993). As the Chancellor recently explained, "This rule prevented plaintiffs from circumventing a statute of limitations that would bar their legal claim by requesting equitable relief instead." *Kraft v. WisdomTree investments, Inc.*, 145 A.3d 969, 979–80 (Del. Ch. 2016).

[67] *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) (applying California law).

[68] "A Uniform Resource Locator (URL) . . . is the address of a resource on the Internet and the protocol used to access it." *Uniform Resource Locator (URL)*, TECHOPEDIA, http://www.techopedia.com/definition/1352/uniform-resource-locator-url (last visited June 21, 2020).

[69] *Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–35 (9th Cir. 2007) (applying California law).

[70] Plfs. Br. at 26.

## D. THE FEBRUARY 2014 ARTICLE DID NOT REPUBLISH THE EARLIER ARTICLES.

At common law, any repetition of a defamation is a new cause of action for which the original defamer is jointly liable if the repetition was authorized, intended, or could reasonably be expected.[71] The "single-publication rule" pioneered by New York's courts supplanted the common law rule with a new rule, whereby a writing produced a single cause of action, accruing at the time of first publication.[72] Examining the seminal *Duke of Brunswick v. Harmer*,[73] where the sale of a newspaper seventeen years after it was printed restarted the limitations period, New York's Court of Appeals concluded that the common law rule was written in and adapted to "an era which long antedated the modern process of mass publication and nationwide distribution of printed information."[74] California adopted the single-publication rule by statute in 1955.[75]

---

[71] *Mitchell v. Superior Court*, 690 P.2d 625, 633 (Cal. 1984).

[72] *Gregoire v. G.P. Putnam's Sons*, 81 N.E.2d 45, 48–49 (N.Y. 1948)

[73] *See generally Duke of Brunswick v. Harmer*, 14 Q.B. 185 [1849]; 117 Eng. Rep. 75.

[74] *Gregoire*, 81 N.E.2d at 47. As Blackstone explains, the common law itself accreted from the rulings of different judges applying customary law that itself was a syncretism from the successive waves of conquest of England, dating back to pre-Roman times. 1 WILLIAM BLACKSTONE, COMMENTARIES *64. Common law rules thus antedate not merely mass printing and distribution, but the printing press itself. *See* Craig W. Dallon, *The Problem with Congress and Copyright Law: Forgetting the Past and Ignoring the Public Interest*, 44 SANTA CLARA L. REV. 365, 379–80 n.82 (2004) (briefly recounting the history of Gutenberg's printing, and the first advent of printing in England in 1476).

[75] *Shively*, 80 P.3d at 685 (citing Cal. Civ. Code § 3425.3).

Subsequent *editions* of the same publication, however, are not protected by the single-publication rule and instead create a new accrual date.[76] For instance, though the information content and literary form of the publication is identical, a paperback edition is a new publication with a new accrual date.[77]

The advent of electronic mass media and the Internet transformed the manner in which information is transmitted in a manner no less ground-shaking than those the New York courts observed from Plantagenet England to twentieth-century America.

New York courts extended the single-publication rule to internet publications in *Firth v. New York*,[78] which California courts have adopted.[79] The *Firth* court rejected the analogy of a website to an anthology; for an anthology each newly-added page was a new chapter which in print would constitute a new edition.[80] Such a constrictive rule would require a publisher to create a new website for each new

---

[76] *Id.*

[77] *Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382 (N.Y. 1981). California courts identify *Rinaldi* as an authority for interpreting their own single-publication rule. *Shively*, 80 P.3d at 685.

[78] 775 N.E.2d 463 (N.Y. 2002).

[79] *Traditional Cat Assn., Inc. v. Gilbreath*, 13 Cal.Rptr.3d 353, 361 (Cal. Ct. App. 2004). Though California's highest court has never explicitly affirmed the intermediate appellate court's *Traditional Cat*, its justices cite to *Firth* as though that case were settled California law. *E.g. Christoff v. Nestle USA, Inc.*, 213 P.3d 132, 143 (Cal. 2009) (Werdegar, J, concurring).

[80] *Firth*, 775 N.E.2d at 467. The *Firth* court uses the example of its own web page, which continually adds pages for its new slip opinions. *Id.*

piece of information it wished to convey to the world, or risk retriggering statutes of limitations for all of its past writings.[81] *Firth* rejected such an interpretation, and found that the "republication exception has no application at all to the addition of unrelated material on a Web site, for it is not reasonably inferable that the addition was made either with the intent or the result of communicating the earlier and separate defamatory information to a new audience."[82]

*Firth* is silent as to how specific or significant a change to a website must be in order to constitute republication, and California courts have not yet ruled on the issue. The Court of Chancery deferred[83] to the Ninth Circuit's position in *Yeager v. Bowlin*: republication in California requires that either "*the statement* itself is substantively altered or added to, or *the website* is directed to a new audience."[84] This interpretation of California law by the Court of Chancery is the law of the case—the operable facts have not changed and the Plaintiffs have demonstrated no compelling reason to revisit it.

As Vox has carried its initial burden of demonstrating that the cause of action for the 2012 Articles accrued outside the statute of limitations, Perlman, Rearden,

---

[81]  *Id.*

[82]  *Id.* at 466.

[83]  *Perlman I* at \*42 n.71.

[84]  693 F.3d 1076, 1082 (9th Cir. 2012) (emphasis added).

-18-

and Artemis are now tasked with showing the existence of a genuine issue of fact as to whether a republication occurred.[85]

### 1. The February 2014 Article did not direct The Verge to a new audience.

Taking the second potential method of republication first, Plaintiffs argue that the February 2014 Article is aimed at a different segment of The Verge's audience.[86] As Plaintiffs tell it, Artemis's consumers are business entities, and the pCell technology it is developing is aimed at the commercial wireless connectivity sector.[87] By contrast, OnLive was a consumer-focused product aimed at the video gaming sector.[88]

This theory cannot withstand an inquiry into what constitutes "the website" for publication purposes. As the Court of Chancery explained, "under California

---

[85] Plaintiffs argue that the Court of Chancery shifted the burden to Vox to affirmatively disprove republication when it denied Vox's Motion to Dismiss. Plfs. Br. at 29 (citing *Perlman I* at *48–49). Not so. A party moving for dismissal under Rule 12(b)(6) bears the burden of showing to a reasonable certainty that *no* set of facts could be adduced under which the non-movant would obtain relief. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 610–11 (Del. 2003). At summary judgment, the movant bears a different burden, that of showing no factual issue exists for a trial to resolve based on the discovery actually produced, at which point "the burden shifts to the nonmoving party to demonstrate that there are genuine issues of material fact that must be resolved at trial." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009). Failure to obtain dismissal leaves the standard applicable to and the repetitive burdens to be carried in a subsequent summary judgment motion.

[86] Plfs. Br. at 29.

[87] *Id.*

[88] *Id.*

law, a statement on a website is not republished unless *the statement itself* is substantively altered or added to, or *the website* is directed to a new audience."[89]

If the Verge is "the website," then directing one segment of the Verge's readership to an article on the site is by definition only reshuffling its existing audience, not directing itself to a new one. Conversely, if "the website" is each article individually, then the print analogy for the subsequent articles is not a new edition but to a *sequel*. A sequel may attract a new audience to the original by motivating them to seek out the earlier publication. But, this does not thereby republish those earlier publications, because "neither the time nor the circumstances in which a copy of a book or other publication finds its way to a particular consumer is, in and of itself, to militate against the operation of the unitary, integrated publication concept."[90]

### 2. The 2014 Article Did Not Alter or Add to the Prior Statement.

The *Amici* submitted a brief urging the Court to find that no republication occurred in this case.[91] The *Amici* cite to a number of courts that have found that, absent a change in the content of the destination page, a hyperlink accompanied by

---

[89] *Perlman I* at *17 (quoting *Yeagar*, 693 F.3d at 1082) (emphasis added).

[90] *Rinaldi*, 420 N.E.2d at 381.

[91] *See generally* Mot. of *Amici* for Leave to File, ex. 1 (D.I. 27) [Hereinafter "*Amicus* Br."].

a description of the content does not substantively alter the destination, and hence does not republish it.[92]

Plaintiffs themselves do not disagree with the persuasive authorities the *Amici* present, and instead distinguish their theory by inclusion of an additional element which they argue makes a hyperlink a substantive alteration, and hence republication, of the destination page: (1) a hyperlink with (2) a description that (3) is independently defamatory as to the same subject matter.[93]

The Court of Chancery allowed for the possibility that Plaintiffs may prove just such a theory when it rested its denial of Vox's motion to dismiss on the possibility of proving precisely this third means of republication.[94] At that stage, Vox was required to demonstrate that recovery was impossible even assuming the truth of every fact Plaintiffs asserted "under any reasonably conceivable set of circumstances."[95] But allegations key to that theory that prevented dismissal on the

---

[92] *Amicus* Br. at 12–13.

[93] *See* Plfs. Br. at 33 ("It is about Vox's specific improper use of a substantive hyperlink that *itself* is a false and defamatory statement that updated a prior false and defamatory article and was directed to a new audience, perpetuating and continuing the defamation of Plaintiffs."); *see also* Oral Arg. Tr. at 33–34 ("Just to be clear, we have no issues with mere hyperlinks. What they did in 2014. . . they've updated the 2012 article with a statement that is false.") (D.I. 63).

[94] *See Perlman I* at *47 (Plaintiffs properly plead republication by alleging Vox "include[ed] a hyperlink in the 2014 Article's very first sentence, *which Plaintiffs allege is itself false and defamatory*.") (emphasis added).

[95] *Perlman I* at *20.

pleadings then have been contradicted by the discovery record, leading now to a different result at summary judgment.[96]

As the Defunct Statement in which the hyperlink occurs is true, Plaintiffs fail to satisfy their own proposed test. When interpreting a sister state's law, a forum state should avoid creating new rules of decision that would not and need not be applied in the case before it.[97] So, judicial modesty prevents the Court here from expounding as *obiter dicta* whether Plaintiffs' proposed three-element rule correctly delineates the requirements for a means of republication of Internet material by hyperlink in California.[98]

---

[96] As required under Rule 12(b)(6), the Court of Chancery deemed true the Complaint's allegation "OnLive itself was never dissolved and remains 'active' and in good standing to this day." *Perlman I* at *4. But the record is now clear that OnLive was long-delinquent on its franchise taxes at the time Vox published the Defunct Statement, and its corporate status terminated shortly thereafter because of that delinquency. Rogers Aff. ex. 1.

[97] *Taylor v. LSI Logic Corp.*, 1998 WL 51742, at *10 (Del. Ch. Feb. 3, 1998), *aff'd*, 715 A.2d 837 (Del. 1998).

[98] A majority of states adopted the single-publication rule by the mid-1980s. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 n.8 (1984) (citing Restatement (Second) of Torts § 577A, Reporter's Note). A key purpose of the rule is encouraging inter-jurisdictional uniformity and cooperation in defamation actions. *Id.* at 777–78. If Delaware had adopted the single-publication rule, this Court might have occasion to consider whether Plaintiffs' rule correctly states Delaware law. But, Delaware courts have not yet had occasion to decide whether the single-publication rule applies as to printed defamation at all. *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923 at *6 n.39 (Del Super. Ct. Nov. 1, 2017). So engaging *dicta* to explore the rule's boundaries for internet publications in Delaware would, at very best, be unwise—unnecessarily declaring those boundaries for our cross-continent sister in the present case would, at very least, be foolish.

-22-

## IV. CONCLUSION

The only writing at issue published by Vox within the applicable statute of limitations truthfully reported that Perlman's OnLive venture was defunct, and that the reach of its technological wizardry exceeded the profitability it achieved through its corporate grasp. This truthful article, by linking to older writings on the same topic on the same website, does not republish or adopt the content of those older writings for defamation purposes under California law. As a result, no genuine issue of material fact exists upon which Plaintiffs could prevail at trial.

Vox's Motion for Summary Judgment is therefore **GRANTED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge


Original to Prothonotary,

cc:     All Counsel via File and Serve