IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL GOODE[1], | § | |
| | § | No. 137, 2025 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| SARINA GOODE, | § | File No: CN21-04778 |
| | § | Pet. No. 23-23476 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 17, 2025
Decided: November 17, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

## <u>**ORDER**</u>

Upon consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1) Daniel Goode ("Ex-Husband") and Sarina Goode ("Ex-Wife") married in November 2009 and separated in September 2020.[2] The Family Court ordered the parties' divorce decree in November 2022 without exercising jurisdiction over ancillary matters. The parties memorialized the terms of their separation in a writing (the "Separation

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] Amended App. to Opening Br. On Appeal of Resp't Below-Appellant at A13 [hereinafter A___] (Motion to Reopen at 2).

Agreement").[3]  Although the Separation Agreement was never signed by either party, the parties performed in accordance with the agreement for about two years until Ex-Husband stopped making payments required by the agreement around July 2023.[4]  Shortly thereafter, Ex-Wife filed a Motion to Reopen the divorce (the "Motion to Reopen") seeking to address ancillary matters.[5]  After the court denied the motion, Ex-Wife filed a Petition for Specific Performance of the Separation Agreement (the "Petition"), which the court granted.[6]

(2)    On appeal, Ex-Husband argues that the Family Court erred in granting the Petition because (a) the Petition is barred by *res judicata* and judicial estoppel and (b) the Separation Agreement is not an enforceable agreement.  Ex-Husband also argues that the court erred in awarding attorneys' fees because 13 *Del. C* § 1515 does not apply.  For the following reasons, we **AFFIRM** the Family Court's decision.

*I.    Factual and Procedural Background*

(3)    The parties married in November 2009.[7]  After the parties separated in September 2020, Ex-Husband filed for divorce on September 16, 2021, without requesting that the court exercise ancillary jurisdiction over any matters.[8]  Ex-Wife "did not file a

---

[3] A14 (Motion to Reopen at 3).

[4] A781 (Family Court's Amended Order Granting Petition [hereinafter "Petition Order"] at 4); *see also* A52 (Motion to Reopen Exhibit A).

[5] A121 (Family Court Order Denying Ex-Husband's Motion for Reargument at 2).

[6] A797 (Petition Order at 20); A122 (Family Court Order Denying Ex-Husband's Motion for Reargument at 3).

[7] A780 (Petition Order at 3).

[8] A779 (Petition Order at 2).

response or engage the Court or counsel," and the Family Court issued a final divorce decree in November 2022.[9]

(4) From September 2020 to April 2022, the parties discussed the terms of their separation without seeking "assistance of attorneys or utilizing the Court."[10] The parties negotiated "the disposition of the parties' mar[it]al property, alimony, custody of their minor children, and child support" through text messages, emails, and in-person discussions.[11] The parties recorded any decisions reached during those negotiations in a document "entitled by the parties as 'Divorce Agreement.'"[12] That document reached its final form (*i.e.*, the Separation Agreement) when Ex-Wife emailed the document to Ex-Husband on April 3, 2022 and Ex-Husband responded on April 4, 2022, with an email stating, "I'm okay with this. Let's sign this this week."[13] No later edits were ever made to the document.[14]

(5) The Separation Agreement outlined, among other things, that Ex-Husband is responsible for paying Ex-Wife (i) "$1,100 per month for twelve (12) years (until October 1, 2033) for a total of $158,400" plus a one-time payment of $30,000 "in order to buy [Ex-Wife] out of the marital home that [Ex-Husband] was to retain" and (ii) "$500 per

---

[9] A121 (Family Court Order Denying Ex-Husband's Motion for Reargument at 2).

[10] A780 (Petition Order at 3).

[11] A14 (Motion to Reopen at 3); A780 (Petition Order at 3).

[12] A780 (Petition Order at 3).

[13] A780, 782 (Petition Order at 3, 5); A72 (Petition Exhibit 1).

[14] A780 (Petition Order at 3).

month for child support until October 1, 2033."[15]  The Separation Agreement also contained the following language above each party's signature block:

> By executing this Agreement, I swear that to my knowledge the information contained herein is a full and complete disclosure and it is my intention that the Agreement is a full and final division of all issues related to this marriage and I am satisfied with the agreement contained herein.[16]

However, the Separation Agreement was never executed.

(6)    Regardless, Ex-Husband made a lump sum payment of $30,000 to Ex-Wife in October 2021 and started making monthly payments of $1,600 to Ex-Wife in May 2021.[17]  Around July 2023, Ex-Husband stopped making payments.[18]  On August 16, 2023, Ex-Wife filed the Motion to Reopen seeking to "reopen ancillary matters of alimony, property division, court costs and attorney's fees" pursuant to Delaware Family Court Rule 60(b) ("Rule 60").[19]  Ex-Wife asserted that she acted with excusable neglect when she previously "did not engage the Court or the advice of counsel" on ancillary matters because (i) "[Ex-Husband] told her '[he] would take care of everything'" and (ii) Ex-Wife and Ex-Husband memorialized their agreement as to the ancillary matters in the Separation Agreement.[20]  Ex-Wife argued that "[b]ecause [Ex-Husband] has stopped making his

---

[15] A781 (Petition Order at 4); *see* A741–42 (Separation Agreement §§ 9, 11).

[16] A743–44 (Separation Agreement).

[17] A790 (Petition Order at 13); A781 (Petition Order at 4).

[18] A781 (Petition Order at 4); A52 (Motion to Reopen Exhibit A).

[19] A12–13, 16 (Motion to Reopen at 1–2, 5).

[20] A14, 16 (Motion to Reopen at 3, 5).

monthly support payments, it is no longer equitable for the final divorce decree to have a prospective application without ancillary matters being addressed."[21]

(7)　In response, Ex-Husband argued that Ex-Wife did not satisfy Rule 60's requirements because Ex-Wife did not show that she "acted with 'excusable neglect'" (*i.e.*, "conduct 'of a reasonably prudent person under the circumstances'").[22] Ex-Husband asserted that (i) Ex-Wife did not claim a valid reason for failing to request that the court exercise ancillary jurisdiction before the court issued the divorce decree and (ii) it was not reasonable for Ex-Wife to rely on an unsigned and unenforceable agreement.[23] Ex-Husband also argued that "[Ex-Wife's] contention that there was an agreement is irreconcilable with her conduct before the issuance of the Decree and her position to *reopen* the Divorce rather than to *enforce* a purported agreement" because spouses only seek to reopen a divorce if no agreement exists.[24] On September 12, 2023, a Family Court Commissioner issued an Order (the "September Order") denying the Motion to Reopen "for all of the reasons set forth in [Ex-Husband's] Response" without further analysis or reasoning.[25] Ex-Wife did not file a Request for Review of the September Order.

---

[21] A16 (Motion to Reopen at 5).

[22] A44–45 (Ex-Husband's Response to Motion to Reopen at 1–2).

[23] A45–46 (Ex-Husband's Response to Motion to Reopen at 2–3).

[24] A46–47 (Ex-Husband's Response to Motion to Reopen at 3–4) (emphasis in original).

[25] A54 (Family Court Order Denying Motion to Reopen).

(8)    On October 30, 2023, Ex-Wife filed the Petition.[26]  Ex-Husband moved to dismiss arguing that the Petition is barred by *res judicata*.[27]  In response, Ex-Wife argued that *res judicata* does not bar the Petition for two reasons.[28]  First, Ex-Wife asserts that the Petition and the Motion to Dismiss do not concern the same cause of action because the "Motion to Reopen involved separate issues and was denied by the [c]ourt based on a different legal standard."[29]  Second, she argues that there is no "final order between these parties where the existence of an enforceable agreement was in fact argued on the merits."[30]

(9)    The Family Court denied Ex-Husband's Motion to Dismiss in an Order dated November 30, 2023 (the "November Order").  The November Order contains no analysis or reasoning.[31]  Ex-Husband subsequently filed a Motion for Reargument claiming that the Family Court abused its discretion by issuing the November Order without an explanation and reiterating that the Petition "must be dismissed on the basis of *res judicata*."[32]  The Family Court denied Ex-Husband's motion and "further explain[ed] the basis for its November [Order]."[33]  The court explained that *res judicata* only "bars a claim where a

---

[26] A69 (Petition).

[27] A89 (MTD ¶ 1).

[28] A98–100 (Ex-Wife's Response to MTD at ¶ 13–24).

[29] A98 (Ex-Wife's Response to MTD at ¶ 15).

[30] A100 (Ex-Wife's Response to MTD at ¶ 24).

[31] A102 (Family Court Order Denying MTD).

[32] A104 (Ex-Husband's Motion for Reargument ¶ 2).

[33] A126 (Family Court Order Denying Ex-Husband's Motion for Reargument at 7).

6

five-prong test is satisfied[,]" and it found that the Ex-Husband failed to show that the third prong was met.[34]

(10)    Specifically, the court found the requirement that "the original cause of action or the issues decided was the same as the case at bar" was not met because the Petition did not arise from the same transaction as the Motion to Reopen and it "is both legally and factually separate and distinct from" the Motion to Reopen even though the Separation Agreement was mentioned in the Motion to Reopen.[35]  Additionally, the court found that "denying [Ex-Wife] the opportunity to litigate the matter of her Petition" would be inequitable because "the issue of contract enforceability has not yet been heard on its merits[.]"[36]  Accordingly, the court affirmed its holding in the November Order that the Petition is not barred by *res judicata*.[37]  Ex-Husband filed an interlocutory appeal which this Court refused on February 27, 2024.[38]  The parties proceeded to trial to litigate the merits of the Petition.

(11)    At trial, Ex-Wife made an oral motion under Rule 60 to vacate the September Order arguing that the order was void on its face because its reasoning was inadequate.[39]

---

[34] A127 (Family Court Order Denying Ex-Husband's Motion for Reargument at 8) (quoting *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009)).

[35] A126–27 (Family Court Order Denying Ex-Husband's Motion for Reargument at 7–8).

[36] A127–28 (Family Court Order Denying Ex-Husband's Motion for Reargument at 8–9).

[37] A128 (Family Court Order Denying Ex-Husband's Motion for Reargument at 9).

[38] *Goode v. Goode*, 2024 WL 807334, at *1–2 (Del. Feb. 27, 2024) (ORDER) (determining that interlocutory review was not warranted because the Family Court's decision did not involve a question of first impression or otherwise "satisfy the factors for interlocutory review set forth in Rule 42(b)(iii)(A), (D), (E), or (F)").

[39] A149–56 (Trial Transcript at 7–14).

7

In response, Ex-Husband argued that (i) Ex-Wife waived her right to appeal the September Order by not filing a timely Request for Review of that order and (ii) Ex-Wife did not show that Rule 60's requirements were met.[40] The court stated that, "analysis of the Commissioner's decision, in my opinion, is time barred[,]" and it found that Rule 60 was inapplicable because an order is not void on its face simply because of inadequate reasoning.[41] Accordingly, the court denied Ex-Wife's motion to vacate the September Order.[42]

(12) In a post-trial decision and order, the Family Court granted Ex-Wife's Petition for specific performance and ordered Ex-Husband to pay Ex-Wife a lump sum of $137,500 as well as attorneys' fees.[43] The court determined that Ex-Wife showed by clear and convincing evidence that "a valid contract exists, [] she is willing and able to perform, [] the balance of the equities weighs in favor of [Ex-Wife,]" and "there is no other adequate legal remedy."[44] To support its determination that a valid contract exists, the court found that (i) "the parties intended to be bound by the Separation Agreement based upon the messages and most importantly, the conduct of the parties" and (ii) the Separation Agreement terms were sufficiently definite and addressed all material terms.[45] "Given the financial inequities and complex legal issues raised and litigated," the Family Court found

---

[40] A150–53 (Trial Transcript at 8–11).

[41] A155 (Trial Transcript at 13).

[42] *Id.*

[43] A797 (Petition Order at 20).

[44] A781, 797 (Family Court's Amended Order Granting Petition at 4, 20).

[45] A781–89 (Petition Order at 4–12).

it equitable to award attorneys' fees to Ex-Wife pursuant to 13 *Del. C* § 731—later corrected to 13 *Del. C* § 1515—and Delaware Family Court Rule of Civil Procedure 88.[46] Further, the court found that judicial estoppel did not apply because (i) Ex-Wife's positions in the two actions were consistent and (ii) the court "was not persuaded to accept [Ex-Wife's] prior argument as the basis for its ruling."[47]

(13)   Ex-Husband filed a Motion for Reargument claiming that the Family Court erred in awarding attorneys' fees because (i) the cited statutes only grant authority to award attorneys' fees in the context of custody and divorce proceedings and (ii) the court did not state a sufficient reason for any other exception to the American Rule.[48] The Family Court denied the motion, holding that it had authority to award attorneys' fees under 13 *Del. C* § 1515 pertaining to divorce proceedings because the Petition "stems from a divorce proceeding."[49] This appeal followed.

## II.   *Contentions on Appeal*

(14)   On appeal, Ex-Husband raises three main arguments. First, Ex-Husband argues that the court erred in finding that the Petition was not procedurally barred by (i) *res judicata* because the Petition "arose out of the same series of operative facts" as the Motion to Reopen and (ii) judicial estoppel because Ex-Wife "previously advanced a claim

---

[46] A794–96 (Petition Order at 17–19); *see* A813 (Order Addressing Motion for Reargument at 5).

[47] A797 (Petition Order at 20).

[48] A800–02 (Ex-Husband's Motion for Reargument at 1–3). The parties, by stipulation and agreement, resolved Ex-Husband's separate argument that the court erred in awarding a lump sum rather than monthly payments. A815 (Order Addressing Motion for Reargument at 7).

[49] A813–14 (Order Addressing Motion for Reargument at 5–6).

inconsistent with an enforceable agreement[.]"[50]  Second, Ex-Husband asserts that the court erred in determining that the Separation Agreement is an enforceable contract because (i) the parties never reached a meeting of the minds, (ii) the parties agreed that the agreement would only be effective upon signing, (iii) the parties continued to negotiate material terms, and (iii) the agreement included a material term that was void.[51]  Lastly, Ex-Husband contends that the Family Court erred in finding that it had the authority to award attorneys' fees under (i) 13 *Del. C* § 1515 because "[t]his was not a divorce action."[52]

(15)  In response, Ex-Wife first argues that the court correctly found that the Petition was not barred by (i) *res judicata* because the third prong of the five-prong test for *res judicata* was not met and (ii) judicial estoppel because it does not apply.[53]  Ex-Wife also argues that the lack of analysis and reasoning in the September Order was a "*per se* abuse of discretion and cannot serve as a basis for claim preclusion or judicial estoppel."[54]  Second, Ex-Wife asserts that the court correctly determined that the Separation Agreement was an enforceable contract because (i) signing the contract was not a condition precedent to enforceability, (ii) the parties' subsequent negotiations only concerned non-essential

---

[50] Opening Br. On Appeal of Resp't Below-Appellant [hereinafter "Opening Br."] at 8.

[51] *Id.* at 9–10.

[52] *Id.* at 10.

[53] Answering Br. On Appeal of Pet'r Below-Appellee [hereinafter "Answering Br."] at 14–16, 21–22.

[54] *Id.* at 12–14, 21.

terms, and (iii) the child support provision was not contrary to law.[55]  Finally, Ex-Wife

claims that the court properly exercised its authority to award attorneys' fees under

13 *Del. C* § 1515 because "Section 1515 is the applicable authority for fee shifting in

matters arising after parties divorce."[56]

### III.    Standard of Review

(16)    The first issue, concerning the court's application of *res judicata* and judicial

estoppel, and the third issue, concerning whether a particular statute is applicable, are

questions of law.[57]  The second issue, regarding "[w]hether a contract has been formed[,]

is a mixed question of law and fact."[58]   "We review the Family Court's 'factual

determinations for clear error and its legal rulings *de novo*.'"[59]  Our review of the Family

Court's factual findings is limited to ensuring "that they are supported by the record and

are not clearly erroneous."[60]   "We will not substitute our opinion for the inferences and

deductions of the trial judge if those inferences are supported by the record."[61]

---

[55] *Id.* at 23–33.

[56] *Id.* at 35.

[57] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV, LLC*, 87 A.3d 632, 639 (Del. 2014) (*res judicata*); *Motorola Inc. v. Amkor Tech.*, 958 A.2d 852, 859 (Del. 2008) (judicial estoppel); *Graleski v. ILC Dover*, 26 A.3d 213, 2011 WL 3074710, at *3 (Del. July 26, 2011) (ORDER) (applicability of a statute).

[58] *Shilling v. Shilling*, 332 A.3d 453, 461 (Del. 2024).

[59] *Id.* at 462 (quoting *Eagle Force Holdings, LLC v. Campbell* (*Eagle Force I*), 187 A.3d 1209, 1228 (Del. 2018)).

[60] *Id.*

[61] *Woods v. Woods*, 132 A.3d 1160, 2016 WL 489904, at *2 (Del. Feb. 5, 2016) (ORDER).

*IV.*    *Analysis*

*A.*    *This Action is Not Barred by Either Res Judicata or Judicial Estoppel*

(17)    "To protect both judicial economy and the interests of defendants in avoiding a multiplicity of actions, *res judicata* precludes plaintiffs from splitting claims and 'seeking the same relief in subsequent litigation under a different substantive theory.'"[62]    As an initial matter, *res judicata* only "applies to successive litigations, not within the same case."[63]    The parties do not dispute that *res judicata* is applicable here (*i.e.*, neither party argues that the Motion to Reopen and the Petition are part of the same case), and this Court has previously applied *res judicata* to similarly related family court proceedings implicitly finding that the relevant actions were not part of the same case.[64]    In keeping with our practice of addressing only issues fairly presented, we will assume that the Motion to Reopen and the Petition are separate actions and that the doctrine of *res judicata* is therefore applicable.

(18)    The affirmative defense of *res judicata* will bar a claim in Delaware if:

---

[62] *Wilson v. Brown*, 2011 WL 1632348, at \*2 (Del. Super. Apr. 18, 2011) (quoting *LaPoint*, 970 A.2d at 196), *aff'd*, 36 A.3d 351, 2012 WL 195393 (Del. Jan. 24, 2012) (ORDER).

[63] *Elutions Cap. Ventures S.A.R.L. v. Betts*, 2022 WL 17075692, at \*6 (Del. Ch. Nov. 18, 2022) (ORDER), *appeal denied*, 289 A.3d 1274, 2023 WL 164300 (Del. Jan. 12, 2023) (ORDER); *see also French v. French*, 622 A.2d 1095, 1992 WL 453269, at \*3 (Del. Dec. 7, 1992) (ORDER) (finding *res judicata* inapplicable where the relevant motions "were part of the same suit").

[64] *See Green v. Green*, 152 A.3d 582, 2016 WL 7212309, at \*3 (Del. Dec. 12, 2016) (ORDER) (applying *res judicata* to alimony petition following a trial court's final ancillary hearing on property division and alimony); *Div. of Child Support Enf't ex rel. Blake v. Myrks*, 606 A.2d 748, 751–52 (Del. 1992) (applying *res judicata* to a request for blood testing to determine paternity following an earlier child support order); *Brittingham v. Brown*, 560 A.2d 489, 1989 WL 47247, at \*3 (Del. March 28, 1989) (ORDER) (applying *res judicata* to petition for specific performance of a separation agreement following an earlier court action addressing child support issues).

(1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[65]

Under Delaware's transactional approach to the third prong, all issues arising from the same transaction "which might have been raised and decided in the first suit as well as [] all issues that actually were decided" constitute the same cause of action.[66] "In addition to showing that the same transaction formed the basis for both the present and former suits, the defendant must show that the plaintiff 'neglected or failed to assert claims which in fairness should have been asserted in the first action.'"[67] Neither requirement is met here.

(19) To start, in determining whether two claims arise from the same transaction, courts must "giv[e] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[68] When making this determination, courts must focus "on the underlying

---

[65] *LaPoint*, 970 A.2d at 192 (quoting *Dover Hist. Soc'y, Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1092 (Del. 2006)). "In essence, the doctrine of *res judicata* serves to prevent a multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction." *Id.*

[66] *RBC Cap.*, 87 A.3d at 645 (quoting *LaPoint*, 970 A.2d at 191–92); *see also Tolliver v. Qlarant Quality Sols., Inc.*, 2022 WL 17097602, at *9 (Del. Super. Nov. 21, 2022) ("Delaware courts follow the 'transactional approach' to *res judicata*." (quoting *LaPoint*, 970 A.2d at 193)), *aff'd*, 297 A.3d 1084, 2023 WL 3577954 (Del. May 19, 2023) (ORDER).

[67] *LaPoint*, 970 A.2d at 193 (quoting *Kossol v. Ashton Condo. Ass'n, Inc.*, 637 A.2d 827, 1994 WL 10861) (Del. Jan. 6, 1994) (ORDER)).

[68] *Id.* (quoting *Restatement (Second) of Judgments* § 24(2) (1982)).

13

transaction, not the type of relief sought or substantive legal theories."[69] Each "claim must [] be analyzed in the light of the transaction which [it] challenges."[70]

(20) Although both actions rely on facts from the same time period and relate to the parties' divorce, they arise from distinct transactions. The first action, which seeks to have matters ancillary to the divorce reopened, arises out of the divorce proceeding,[71] and the second action, which seeks specific performance of an agreement that was not made a part of the divorce proceeding, arises from the contractual resolution of financial matters.[72] The parties did not elect to combine the resolution of these financial matters with their divorce decree. Parties have the option to combine the resolution of financial matters with a divorce decree by asking the court (i) to exercise ancillary jurisdiction over such financial matters and resolve them equitably within the divorce proceeding[73] or (ii) if the parties elect to resolve such financial matters by agreement, to enter such agreement as a court order.[74]

---

[69] *Villare v. Beebe Med. Ctr., Inc.*, 2013 WL 2296312, at *3 (Del. Super. May 21, 2013) (quoting *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del. Ch. 1980)).

[70] *Flynn*, 417 A.2d at 382.

[71] *See* A13 (Motion to Reopen at 2).

[72] *See* A56 (Petition at 1).

[73] 15 *Del. C.* § 1513(a) ("In a proceeding for divorce or annulment, the Court shall, *upon request of either party*, equitably divide, distribute and assign the marital property between the parties[].") (emphasis added).

[74] An agreement can "become[] a Family Court order by means of stipulation, incorporation, or merger." *Rockwell v. Rockwell*, 681 A.2d 1017, 1020–21 (Del. 1996) ("Such an agreement or contract is often made an order of the Family Court in connection with the divorce proceedings."); *see, e.g.*, *Kenton v. Kenton*, 571 A.2d 778, 780 (Del. 1990) ("[T]he parties entered into a separation agreement [], which was subsequently incorporated into a Final Decree of Divorce[].").

(21)    The parties did not combine the Separation Agreement with their divorce decree here.  In fact, Ex-Wife, realizing that she no longer wanted financial matters to remain separate from the divorce decree, filed the Motion to Reopen asking the court to exercise ancillary jurisdiction.  In response, Ex-Husband argued, and the court found, that the matters should remain separate because Ex-Wife did not satisfy the requirements under Rule 60 to reopen the final divorce decree.[75]  We conclude that the record supports the court's determination that the Motion to Reopen and the Petition did not arise from the same transaction.

(22)    Even if the two actions did arise from the same transaction, Ex-Husband has not shown that the Petition "in fairness should have been asserted in the first action."[76] Delaware courts have found that a claim should have been asserted in a prior action if the opposing party reasonably believed that the previous action would have resolved their second claim.[77]  In *Silva*, the court concluded that the defendant could not have reasonably believed that previous litigation resolving a contractual compensation obligation would have resolved partnership compensation claims because the defendant knew that the

---

[75] A44–46 (Response to Motion to Reopen ¶ 7–8); A54 (September Order).

[76] *See LaPoint*, 970 A.2d at 193–94.

[77] *See Grunstein v. Silva*, 2014 WL 4473641, at *44 (Del. Ch. Sep. 5, 2014) (observing that "preclusion can properly be imposed when the claimant's conduct induces the opposing party reasonably to suppose that the litigation will firmly stabilize the latter's legal obligations" but finding that defendant could not have reasonably believed that to be the case (quoting *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 180 (Del. Ch. 2010))), *aff'd*, 113 A.3d 1080, 2015 WL 1880664 (Del. April 23, 2015) (ORDER), and *aff'd sub nom.*, *Dwyer v. Silva*, 113 A.3d 1080, 2015 WL 1880672 (Del. April 23, 2015) (ORDER); *Cf. Saunders v. Sullivan*, 608 A.2d 730, 1992 WL 53423, at *1 (Del. Feb. 26, 1992) (ORDER) ("A party is precluded from raising in subsequent lawsuits a claim that was resolved in a prior action.").

plaintiff expected compensation as a partner regardless of the outcome of the previous contractual claim.[78] The *Silva* court also relied on its finding that "the purported contractual and legal bases for relief asserted in both actions differ considerably" even though the actions were "related in a broad sense."[79] Accordingly, the *Silva* court held that *res judicata* did not bar the plaintiff's partnership claims.[80]

(23) Similarly, Ex-Husband should have reasonably expected that, if the divorce were not reopened to allow the Family Court to equitably resolve the ancillary matters, Ex-Wife would seek to enforce the Separation Agreement. In Delaware, the enforcement of a marital separation agreement reached outside of court is "governed by traditional contract principles."[81] And the Family Court has jurisdiction, outside the context of a divorce proceeding, to "resolve any issues resulting from the construction, reformation, enforcement or rescission" of agreements made between "future spouses, spouses and former spouses concerning the payment of support or alimony, the payment of child support or medical support, the division and distribution of marital property and marital debts and any other matters incident to a marriage, separation or divorce."[82] Therefore, the

---

[78] *Silva*, 2014 WL 4473641, at *44 ("Silva knew before and after the Beverly transaction was completed that Grunstein expected compensation as a partner to the Beverly transaction and indirectly through his ownership of MetCap Holding.").

[79] *Id.* at *43.

[80] *Id.* at *44.

[81] *C.W. v. K.P.*, 2024 WL 5036638, at *5 (Del. Fam. Oct. 15, 2024); *see also Rockwell*, 681 A.2d at 1021) (finding that "the proper standards are the same that are generally applicable to the modification, reformation, or rescission of contracts").

[82] 13 *Del. C.* § 507(a).

Family Court's September Order declining to reopen ancillary matters did not preclude it from reviewing Ex-Wife's right to payments pursuant to the Separation Agreement.

(24)    Nor did the Motion to Reopen and the Petition rely on the same legal basis for relief.  The Motion to Reopen sought a second chance at an equitable resolution of financial matters, while the Petition asserted contractual claims.[83]  Even though the Motion to Reopen and the Petition could have been brought together as alternative claims, Ex-Husband could not have reasonably believed that the outcome of the first would have resolved the second.[84]  Accordingly, Ex-Husband has not shown that Ex-Wife, in fairness, should have sought enforcement of the Separation Agreement in the Motion to Reopen. For these reasons, Ex-Husband has not shown that the Motion to Reopen and the Petition are the same cause of action.  Accordingly, *res judicata* does not bar this action.

(25)    Nor does judicial estoppel bar this action.  Judicial estoppel "is meant to protect the integrity of the judicial proceedings" by precluding "a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding."[85]  However, judicial estoppel applies in Delaware only where the litigant's position "contradicts another position that the litigant previously took *and* that the Court

---

[83] *See* A13 (Motion to Reopen at 2); *see* A56 (Petition at 1).

[84] *See C.W.*, 2024 WL 5036638, at *4 (considering a petition for specific performance after a commissioner of the court previously denied a motion to reopen); *F.H.B. v. C.S.B.*, 2007 WL 5158176, at *1–2 (Del. Fam. Oct. 31, 2007) ("decid[ing] each issue separately" when simultaneously considering a motion to reopen and a petition for specific performance).

[85] *Motorola*, 958 A.2d at 859.

was successfully induced to adopt in a judicial ruling."[86] Ex-Husband asserts that both requirements are met here because (i) Ex-Wife's argument contradicts her previous position since she implicitly "conced[ed] that there was no enforceable agreement" when she sought ancillary relief rather than enforcement of the Separation Agreement and (ii) "the Court was persuaded to accept the view that no contract existed, as argued by Husband[]."[87]

(26) We conclude that neither requirement is satisfied here. First, Ex-Wife's claim in the Petition that there was an enforceable contract is consistent with her request to reopen ancillary matters because (i) Ex-Wife acknowledged the Separation Agreement in her Motion to Reopen when explaining why she did not originally seek ancillary jurisdiction and (ii) Ex-Wife's position in the Motion to Reopen was not dependent upon a theory that the Separation Agreement was unenforceable—to the contrary, the Motion to Reopen appears to have sought broader relief than enforcement of the agreement.[88] Second, the court was not induced to adopt any of the arguments Ex-Wife made in her Motion to Reopen; rather, the court stated in the September Order that the Motion to Reopen was denied "for all the reasons set forth in [Ex-Husband]'s response."[89] Therefore, the court clearly did not adopt Ex-Wife's position.

---

[86] *Id.* at 859–60 (emphasis in original); *see also Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 191 A.3d 1109, 2018 WL 3360976, at *4 (Del. July 10, 2018) (ORDER).

[87] Opening Br. at 35–36.

[88] A15 (Motion to Reopen at ¶ 17) ("Husband has significant retirement assets which were not equitably divided.").

[89] A54 (September Order).

(27) Further, it is irrelevant whether the court, in its vague September Order, adopted Ex-Husband's argument that the Separation Agreement was unenforceable because judicial estoppel can only bar Ex-Wife's argument if the court had adopted a prior inconsistent argument made by Ex-Wife, which is not the case here.[90] For these reasons, judicial estoppel is inapplicable here.

(28) Because we find that this action is not barred by either *res judicata* or judicial estoppel for the reasons discussed above, it is unnecessary for us to reach Ex-Wife's argument that the September Order was a "*per se* abuse of discretion and cannot serve as a basis for claim preclusion or judicial estoppel."[91]

### B. The Separation Agreement is an Enforceable Agreement

(29) Delaware courts have discretion to award specific performance where a party has shown "by clear and convincing evidence" that "(1) a valid contract exists, (2) [s]he is ready, willing, and able to perform," (3) "the balance of equities tips in favor of the party seeking performance[,]" and (4) "she has no adequate legal remedy."[92] Further, a contract is enforceable where "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[93] Ex-Husband argues that the Family Court erred in awarding specific

---

[90] *Motorola*, 958 A.2d at 859–60 ("Judicial estoppel acts to preclude a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding.").

[91] Answering Br. at 14.

[92] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1155 (Del. 2010).

[93] *Id.*; *see also Eagle Force Holdings, LLC v. Campbell* (*Eagle Force II*), 235 A.3d 727, 731 (Del. 2020).

performance because Ex-Wife failed to show by clear and convincing evidence that the parties intended to be bound and that the terms of the contract are sufficiently definite. Further, Ex-Husband argues that the Separation Agreement is unenforceable on its face, and defeats any meeting of the minds, because it includes a non-modifiable child support provision.

### 1.    Intent to Be Bound

(30)    Ex-Husband first argues that the court's finding of an intent to be bound was erroneous because his email stating that he was "good with this" was ambiguous.[94]  He asserts that the email referred only to a changed child support amount rather than the contract as a whole.[95]  "[U]nder Delaware law, overt manifestation of assent—not subjective intent—controls the formation of a contract."[96]  "Whether a party manifested an intent to be bound is a question of fact" and requires the factfinder to review "the evidence that the parties communicated to each other up until the time that the contract was signed— *i.e.*, their words and actions—including the putative contract itself."[97]  "We will not disturb the Family Court's factual findings if they are sufficiently supported by the record and are not clearly wrong."[98]

---

[94] Opening Br. at 40.

[95] *Id.*

[96] *Eagle Force II*, 235 A.3d at 734–35.

[97] *Id.*; *see also Shilling*, 332 A.3d at 465 (finding overt manifestation even though the parties did not sign the Settlement Stipulation).

[98] *Craft v. Div. of Fam. Servs.*, 38 A.3d 1254, 2012 WL 603978, at *4 (Del. Feb. 24, 2012) (ORDER).

(31) The Family Court found that the parties overtly manifested an intent to be bound by the Separation Agreement through their email exchanges in April 2022 and their subsequent conduct.[99] The record supports the court's finding that Ex-Husband agreed to the full agreement rather than just the changed child support provision because (i) Ex-Husband's email response included the full agreement as an attachment and stated that he was ready to sign and (ii) Ex-Husband's subsequent conduct complied with terms other than just the child support amount.[100] Accordingly, we conclude that the record supports the court's determination that there was an intent to be bound.

(32) Next, Ex-Husband argues that the court's finding of an intent to be bound by an unsigned agreement was erroneous because the parties "agreed that they would not be bound until signing."[101] "A condition precedent is an act or event, other than a lapse of time, that must exist or occur *before* a duty to perform something promised arises."[102] "Although '[t]here are no particular words that must be used to create a condition precedent,' a condition precedent must be expressed clearly and unambiguously."[103] "Whether a condition precedent exists is a question of contract interpretation, the answer to which we review *de novo*."[104]

---

[99] A782–86 (Petition Order at 5–9).

[100] A219–20 (Trial Transcript at 77–78); A223–25 (Trial Transcript at 81–83).

[101] Opening Br. at 41–42.

[102] *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1167 (Del. 2025) (quoting *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 (Del. Super. July 29, 2021)) (emphasis in original) (citations omitted).

[103] *Thompson St.*, 340 A.3d at 1167–68 (quoting *Aveanna Healthcare*, 2021 WL 3235739, at *25).

[104] *Shilling*, 332 A.3d at 466 ("The use of terms like 'if, provided that, on condition that, or some other phrase that conditions performance' usually connotate 'an intent for a condition rather than

(33)     Ex-Husband argues that signature was a condition precedent because (i) neither party edited the "provision before each signature block binding the parties upon the signing of the document" and (ii) Ex-Wife stated that "the agreement needs to be in writing and notarized."[105]  Ex-Husband has not pointed to any evidence in the record showing that the parties positively agreed to be bound only if the agreement were signed.  Neither the contract provision nor Ex-Wife's statement make signing a condition precedent because neither create an additional requirement for enforceability;[106] they merely indicate that "the parties merely sought to memorialize their agreement by signing the [Separation Agreement]."[107]  Further, as the Family Court noted, "[Ex-Husband] did not condition his performance on the parties signing and notarizing the document as evidenced by the fact that [Ex-Husband] did not wait for signatures or notarization before he began to perform in a way that complied with the terms of the agreement."[108]

(34)     "That parties intend to 'prepare and adopt a written memorial' of an agreement 'will not prevent contract formation if the evidence reveals manifestations of

a promise.'" (quoting *Murphy Marine Servs. of Delaware, Inc. v. GT USA Wilmington, LLC*, 2022 WL 4296495, at *12 (Del. Ch. Sep. 19, 2022))); *see also Thompson St.*, 340 A.3d at 1165 ("The existence of a condition precedent is a question of contract interpretation, and therefore, of law." (quoting *Aveanna Healthcare*, 2021 WL 3235739, at *25)).

[105] Opening Br. at 41–42.

[106] *See Brady v. Huber*, 2023 WL 3736371, at *7 (Del. Ch. May 31, 2023), *report and recommendation adopted*, (Del. Ch. 2023) ("[T]he provision in the Settlement Agreement defining the effective date is not a condition precedent, because it does not create an additional requirement for enforceability.").

[107] *Shilling*, 332 A.3d at 467; A14 (Motion to Reopen at 3) ("The parties agreed to the terms of the written agreement and *intended* to have it signed and notarized but did not ever execute the document." (emphasis added)).

[108] A786 (Petition Order at 9).

assent that are in themselves sufficient to conclude a contract.'"[109]  Additionally, although signatures often serve as strong evidence of an intent to be bound, they are not dispositive.[110]  Because it is undisputed that Ex-Husband acted in accordance with the agreement for two years without the parties signing or notarizing a final document,[111] the absence of signatures does not defeat the formation of a contract in this case.

### 2.    *Sufficiently Definite Terms*

(35)    Next, Ex-Husband argues that "the email string from March 6—April 7, 2022 did not establish an agreement on all terms" because the Separation Agreement, attached to the emails, did not resolve the 2021 taxes or address private school attendance.[112]  "[A] 'contract must contain all material terms in order to be enforceable,' and those terms must be sufficiently definite."[113]  So, an agreement can still be "enforceable even if it leaves

---

[109] *Shilling*, 332 A.3d at 466 (quoting *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1288 (Del. Ch. 2004), *aff'd*, 867 A.2d 903, 2005 WL 277918 (Del. Jan. 31, 2005) (ORDER)); *see also Universal Prods. Co. v. Emerson*, 179 A. 387, 394 (Del. 1935) ("Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed."); *see also Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1288 (Del. Ch. 2004), *aff'd*, 867 A.2d 903, 2005 WL 277918 (Del. Jan. 31, 2005) (ORDER).

[110] *Eagle Force II*, 235 A.3d at 736 ("Although the trial court recognized that, '[s]ignatures are often dispositive evidence of an intent to be bound,' it concluded that 'in this highly unusual case, the signatures alone are not sufficient.'" (quoting *Eagle Force Holdings, LLC v. Campbell*, 2019 WL 4072124, at *18 (Del. Ch. Aug. 29, 2019), *aff'd in part, rev'd in part*, *Eagle Force II*, 235 A.3d)); *see also Shilling*, 332 A.3d at 466 (finding that "the fact that it was never signed does not invalidate the contract that was formed on August 27, 2022").

[111] A583 (Trial Transcript at 134).

[112] Opening Br. at 42–43.

[113] *Shilling*, 332 A.3d at 462 (quoting *Eagle Force I*, 187 A.3d at 1229).

23

other matters to future negotiation, provided those other matters are not 'essential' terms."[114] Whether a term "is or is not essential is context specific[.]"[115] The Family Court found that the 2021 taxes and private school attendance were not essential terms and held that the Separation Agreement was sufficiently definite regarding all of the essential terms.[116] Ex-Husband contends that the court erred in finding that these two issues were not material terms.

(36)  Ex-Husband asserts that the 2021 tax issue was a material term because his email on March 6, 2022 stated that the parties "will need to discuss 2021 taxes."[117] Specific identified issues have been found to be immaterial to a party in the context of a separation agreement where that party did not include the issue in their proposed draft agreement and failed to raise the issue at the time that party accepted the agreement.[118] Here, the court held "that [Ex-Husband] did not view the 2021 taxes as an essential element while the parties were discussing the terms of the [Separation] Agreement" because Ex-Husband did not "include language regarding the 2021 taxes" in either the agreement, even though he

[114] *Brady*, 2023 WL 3736371, at *5 (quoting *Harrison v. Dixon*, 2013 WL 4759681, at *3 (Del. Ch. Sep. 5, 2013)).

[115] *Id.*; *see also Shilling*, 332 A.3d at 463; *Eagle Force I*, 187 A.3d at 1230 ("What terms are material is determined on a case-by-case basis, depending on the subject matter of the agreement and on the contemporaneous evidence of what terms the parties considered essential.").

[116] A786–88 (Petition Order at 9–11).

[117] A73 (Petition Exhibit 1 at 2); Opening Br. at 42; Reply Br. On Appeal of Resp't Below-Appellant at 24.

[118] *Shilling*, 332 A.3d at 464–65 (finding tax issue immaterial where "Husband raised the tax issue only after he expressed hesitation about moving forward with the Sale" and failed to include "any reference to the tax issue in the Settlement Stipulation—drafted by Husband's own lawyer—which Husband sent to Wife").

24

"had the ability edit the document at any time[,]" or his April 4th email accepting the terms of the agreement, despite his awareness of possible tax implications.[119]

(37) Second, Ex-Husband argues that Ex-Wife viewed private school attendance as a material term because Wife indicated that she did not want to move forward with divorce paperwork without adding a provision regarding private school attendance. The court explicitly rejected this argument stating that a "later refusal to close . . . does not transform that issue into a material term."[120] The court found that private school "was not viewed as an essential term by either party" because it was never discussed in the email exchanges leading up to the agreement.[121] The court found that Ex-Husband affirmed this understanding when Ex-Wife brought up this proposed revision because Ex-Husband explicitly stated that the term "doesn't need to go into a divorce agreement."[122]

(38) We determine that the court's conclusion that these terms were not material is supported by the record. Therefore, the Family Court properly found that the Separation Agreement contained sufficiently definite terms for all material issues even though the agreement did not resolve the 2021 taxes or private school attendance.

---

[119] A787 (Petition Order at 10).

[120] A788 (Petition Order at 11) (ellipses in original) (quoting *Shilling*, 332 A.3d at 464 ("[G]iven Husband's omission of any reference to that tax issue in his offer to purchase Wife's interest, his later refusal to close the Sale until the tax issue was decided does not transform that issue into a material term.")).

[121] A787 (Petition Order at 10); *see also* A796 (Petition Order at 19) ("[T]he Court sees Wife's request to add language about the private school as a proposed modification of an already valid contract which has no effect on whether the parties were bound by the Purported Agreement as they were already bound at the time of the email with the proposed modification.").

[122] A787 (Petition Order at 10).

### 3. Child Support Provision

(39) Ex-Husband argues that the Separation Agreement is unenforceable on its face, and therefore defeats any meeting of the minds, because the agreement includes a child support provision with a fixed amount of child support. In Delaware, a "support agreement between former spouses [] is binding and enforceable so long as the interests of the child are not adversely affected."[123] Here, Ex-Husband does not assert that the current child support obligation is insufficient to meet the needs of the children. Instead, he argues that the provision is contrary to law because it calls for "$500 per month regardless of the incomes of the parties, the needs of the children, and/or the residential arrangements of the children" and is not accompanied by a severability clause.[124]

(40) An agreement which contracts away the right of children to receive adequate and fair child support is unenforceable as a matter of law.[125] Delaware courts have found a fixed child support amount to impermissibly contract away a child's right where the contract with the fixed amount precluded any ability to adjust the fixed amount.[126] In *Behrens*, the relevant agreement provided that the father would pay one-half of the

---

[123] *Solis v. Tea*, 468 A.2d 1276, 1282 (Del. 1983).

[124] Opening Br. at 45.

[125] *Behrens v. Behrens*, 829 A.2d 935, 2003 WL 21730131, at *1–2 (Del. July 24, 2003) (ORDER) ("Because as a matter of public policy the Family Court cannot be precluded by private contract from determining the level of support that is in the best interests of minor children, the Stipulation was correctly found to be unenforceable as a matter of law [].").

[126] *Id.* at *1; *see also G. W. F. v. G. P. F.*, 271 A.2d 38, 39 (Del. 1970) ("Parents are not precluded from contracting with respect to the support of their children, but they may not, by agreement, prevent In future the re-examination by a court of the adequacy of the support for minor children agreed upon by the parents.").

children's tuition at a parochial school in lieu of child support and the mother would not seek child support above the tuition payment, but if she did so in the future, she would have to pay the difference between the child support and the father's share of the tuition payment back to the father.[127]  The *Behrens* court determined that the agreement impermissibly "contracted away the rights of two children to be adequately supported" because the terms of the agreement did not allow the child support to ever "exceed one-half of the parochial school tuition" regardless of any change in circumstances.[128]

(41)  Here, the "CHILD SUPPORT" provision of the Separation Agreement states that Ex-Husband "is responsible for paying child support in the amount of $500.00 per month for 12 years," but the "FUTURE DISPUTE" portion of the agreement states that the parties "will work together to negotiate with each other in good faith" if any "change occurs affecting the terms of this Agreement[.]"[129]  As the Family Court noted, this future dispute section would permit the parties "to renegotiate Child Support if any of the underlying statuses of the parties or the children were to change."[130]  Because the Separation Agreement allows for modification of the fixed child support amount, we reject Ex-Husband's claim that the Separation Agreement is facially void.  For these reasons, the court properly found that the Separation Agreement was an enforceable contract.

---

[127] *See Behrens*, 2003 WL 21730131, at *1.

[128] *Id.*

[129] A741–43 (Separation Agreement §§ 9, 14).

[130] A785 (Petition Order at 8).

### C. The Family Court Properly Relied on 13 Del. C. § 1515

(42) "Under the so-called 'American Rule,' litigants—even prevailing litigants—are responsible for paying their own attorneys' fees, unless equitable principles or a fee-shifting statute warrant a different result."[131] Here, the Family Court awarded attorneys' fees pursuant to 13 *Del. C* § 1515, a fee shifting statute.[132] Ex-Husband argues that "[t]he Family Court erred by shifting attorneys' fees pursuant to an inapplicable statute" because (i) Section 1515 only applies to divorce proceedings under Chapter 15 and (ii) the parties' divorce was final prior to this proceeding.[133] "Whether a particular statute is applicable is an issue of law that we review *de novo*."[134]

(43) "If [a] statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[135] Statutory language is only ambiguous "if it is reasonably susceptible to different constructions or interpretations."[136] The language of 13 *Del. C* § 1515 states that the statute applies in the context of "any proceeding under this title."[137] Ex-Husband argues that the phrase "this title" only refers to Chapter 15 because (i) that phrase "is used 34 other times in Chapter 15" to exclusively refer to Chapter 15 and

---

[131] *Paige v. McDonald*, 226 A.3d 1116, 2020 WL 1274896, at *3 (Del. March 16, 2020) (ORDER) (quoting *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1043 (Del. 1996)); *see also In re Delaware Pub. Sch. Litig.*, 312 A.3d 703, 715–16 (Del. 2024).

[132] 13 *Del. C.* § 1515; A794–96 (Petition Order at 17–19).

[133] Opening Br. at 47–48.

[134] *Graleski v. ILC Dover*, 26 A.3d 213, 2011 WL 3074710, at *3 (Del. July 26, 2011) (ORDER); *DeMatteis v. RiseDelaware Inc.*, 315 A.3d 499, 508 (Del. 2024).

[135] *Jud. Watch, Inc. v. Univ. of Delaware*, 267 A.3d 996, 1004 (Del. 2021).

[136] *Id.*

[137] 13 *Del. C.* § 1515.

(ii) if Section 1515 broadly applied to Title 13, it would render the other fee shifting statutes in the title surplusage.

(44)    "[W]hen different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended."[138]  The General Assembly's use of the phrase "this title" rather than "this chapter" in Section 1515 indicates that the General Assembly was referring to Title 13 as a whole.  Throughout Chapter 15, the General Assembly has used the phrase "this chapter" when referencing Chapter 15.[139]  If the General Assembly intended to limit Section 1515's applicability to proceedings under Chapter 15, it would have used the phrase "this chapter" or "Chapter 15 of this title" rather than "this title."  Further, attorneys' fees have previously been properly awarded pursuant to Section 1515 in Title 13 cases other than divorce proceedings.[140]

(45)    Proceedings under Title 13 include, but are not limited to, divorce proceedings and ancillary financial matters covered by Chapter 15.  Title 13 broadly covers many other types of proceedings related to domestic relations including custody, desertion

---

[138] *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982).

[139] *See* 13 *Del. C.* § 1506(d) ("The provisions of *this chapter* relating to the property rights of spouses are applicable to annulment.") (emphasis added); *id.* § 1507 (stating the "prayers for relief that may be available under *this chapter*") (emphasis added); *Cf. id*. § 1509(b)(7)–(8) (referring to "Chapter 5 of this title" and "Chapter 7 of this title").

[140] *See Woods v. Woods*, 132 A.3d 1160, 2016 WL 489904, at *1–2 (Del. 2016) (ORDER) (affirming court's award of attorneys' fees, under § 1515, related to a Petition for Specific Performance of a Stipulation for Custody and Visitation); *see also Talley v. Talley*, 62 A.3d 1224, 2013 WL 596456, at *2, 2 n.9 (Del. 2013) (ORDER) (stating that appellee could ask Family Court to award attorneys' fees incurred on appeal in visitation modification case and stating that Section 1515 authorizes the Family Court to award fees after considering the parties' financial resources).

and support, visitation, adoption, guardianship of a child, and domestic violence.[141]  Since this Petition clearly arises under Section 507 of Title 13, the Family Court properly relied on Section 1515 to award attorneys' fees here.[142]

(46)    For all the reasons discussed above, we **AFFIRM** the judgment of the Family Court.

BY THE COURT:

*/s/ Karen L. Valihura*

Justice

---

[141] *See generally id.* §§ 101–2523.

[142] Although Ex-Husband contends that this interpretation renders other fee shifting statutes in Title 13 mere surplusage, we do not think that is the case.  We note that Title 13 contains some fee shifting statutes that apply in different contexts and specify different factors a court should consider in determining whether to order fee-shifting.  *See, e.g.*, 13 *Del. C.* §§ 513, 731; *see also Lee v. Green*, 574 A.2d 857, 859 (Del. 1990) ("A trial court has broad discretion in determining whether to award attorney fees under 13 *Del. C.* § 513(4) and § 1515."); *In re Marriage of C L.N*, 2001 WL 1857233, at *1 (Del. Fam. Oct. 19, 2001) (Sections "513(a)(5) and 731 in particular afford the Family Court considerable discretion in determining whether an award of fees is warranted in any particular case."); *In re Marriage of CL.N*, 2001 WL 497359, at *14 (Del. Fam. Feb. 2, 2001) (providing that sections 731 and 513(a)(5) permit a court to award attorneys' fees after "considering not only the financial resources of the parties, but also the legal and factual bases for the actions and the results obtained"); *Lucy K. H. v. Carl W. H.*, 415 A.2d 510, 517 (Del. Fam. 1979) (stating that the court is "authorized by 13 *Del. C.* §§ 513(4), 731 and 1515" to award attorneys' fees).  Moreover, Family Court Rule 88 permits the court to order a party to pay the reasonable counsel fees of any other party "where there is a legal or equitable basis therefor []." Family Court Civil Rule 88; *see also Thomas v. Thomas*, 102 A.3d 1138, 1151 (Del. 2014).

30