**Kevin C. KENTON, Respondent Below, Appellant,**

v.

**Carol E. KENTON, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 19, 1989.
Decided: March 22, 1990.

Kathryn J. Laffey, Wilmington, for appellant.

Robert Burton Coonin, of Berkowitz, Schagrin, Coonin & Cooper, P.A., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from the Family Court of the State of Delaware in and for New Castle County. By decisions entered in October and December, 1988, and June and July, 1989, the Family Court, using the Melson Formula, recalculated the child support obligation of respondent-appellant,

Kevin C. Kenton (the "Father").[1] In this appeal, the Father contends that the Family Court erred in applying the Melson Formula, with respect to its treatment of taxable income which he earned by exercising certain employee stock options. The Father also contends that the Family Court erred in making his child support obligation, as recalculated, retroactive to May 1, 1987, because he did not receive notice of the petition for modification until February, 1988. Finally, the Father contends that the Family Court erred in granting the petitioner's motion for attorney fees. For the reasons set forth below, we remand this matter to the Family Court for proceedings consistent with this opinion.

## Procedural History

On December 2, 1987, petitioner-appellee, Carol E. Kenton (the "Mother"), filed a petition to modify the child support obligation of the Father. By an opinion and order dated October 14, 1988, the Family Court ruled that the Father's support obligation, once recalculated, would be retroactive to May 1, 1987. The Father filed a motion for reargument of this issue on October 26, 1988. By an opinion and order dated December 21, 1988, the Family Court denied the Father's motion and set his support obligation for May 1, 1987 to May 1, 1988 at $985 per month.

On January 19, 1989, the Father filed a notice of appeal in this Court from the October 14, 1988 and December 21, 1988 decisions. That appeal was subsequently dismissed and remanded for an entry of a final order regarding the calculation of the Father's support obligation, for the twelve-month period beginning May 1, 1988. Pursuant to that order, the Family Court directed the parties to submit proposed findings of fact, using the Melson Formula. The Mother filed her proposed findings of fact on June 22, 1989, along with a motion for attorneys fees. On June 23, 1989, the Father filed his proposed findings of fact.

On June 30, 1989, the Family Court ordered, *inter alia*, that the Father pay child support of $773 per month for the twelve-month period beginning on May 1, 1988. On July 10, 1989, the Father filed both a response to the Mother's motion for attorney fees and a motion for reargument. On July 25, 1989, the Family Court entered an order granting the Mother's motion for attorney fees and denying the Father's motion for reargument.

## Facts

The parties were married in June, 1970. One son, Christopher, was born of the marriage on January 26, 1976. On March 19, 1982, the parties entered into a separation agreement (the "Agreement"), which was subsequently incorporated into a Final Decree of Divorce granted by the Family Court on May 3, 1982.[2]

Paragraph 15 of the Agreement addresses the Father's child support obligation. Specifically, that paragraph provides for child support payments to be recalculated on an annual basis, pursuant to the Melson Formula. Each year, the recalculated support obligation is to become effective on the first day of May.

In accordance with the Agreement, the Father initially paid $350 per month to the Mother for child support. It appears from the record that the Family Court has subsequently recalculated the Father's support obligation for each of the last four years.[3]

1. Pursuant to Supreme Court Rule 7(c), pseudonyms have been used instead of the actual names of the parties.

2. Even though the agreement was incorporated as part of the Final Divorce Decree, it was not merged. Paragraph 22 of the Agreement provides, in part:

This Agreement may be offered in evidence ... and, if acceptable to the court, may be incorporated by reference in the decree and the decree shall be in conformity with the provision hereof and shall in no respect impair or modify the same. Notwithstanding such incorporation, this Agreement shall not be merged in the decree, but shall survive the same and shall be binding and conclusive on the parties for all time.
*Compare Murphy v. Murphy*, Del.Fam., 467 A.2d 129 (1983).

3. On April 30, 1985, a Family Court Master ordered the Father's child support obligation increased to $415 monthly for the twelve-month period beginning May 1, 1985. On September

The Father's appeal is limited to the recalculations which became effective in May, 1987, and May, 1988, and the related attorney's fees awarded to the Mother.

### Retroactive Modification

■ The Father's first contention is that the Family Court erred by making his recalculated child support obligation retroactive to May 1, 1987 since he did not receive notice of the petition for modification until February, 1988. Federal law prohibits modified support obligations from being retroactive beyond the date that notice of the petition has been given to the respondent either directly or through his agent. 42 U.S.C. § 666(a)(9). Effective March 31, 1987, the General Assembly of the State of Delaware enacted a new statute consistent with the federal law, that prohibits retroactive modification of an order of support beyond the date on which the respondent received notice by certified mail. 13 *Del.C.* § 513(d)(2) provides:

> An order of child support entered by this Court or a court of competent jurisdiction in this or any other state, including orders entered prior to March 31, 1987, shall not be retroactively modified except with respect to any period during which there is a pending petition for prospective modification but only from the date that notice of such petition has been given to the respondent directly or through the respondent's agent.

"Notice" was defined in subsection (f) of Section 513 (as in effect between March 31, 1987 and July 15, 1988) as follows:

> "Notice" for purposes of enforcing or modifying an order of child support shall mean mailed notice mailed by certified mail return receipt requested to the last known address provided to the Court by the parties; ....[4]

The Father argues that, as a matter of law, any modification of his child support obligation may only be retroactive to the date he received notice of this suit. The Mother argues that the terms of the Agreement provide the Father with notice that his child support obligation will be recalculated each year, effective May first and, therefore, making the Father's recalculated child support obligation effective as of May 1987 was proper. In its decision of October 14, 1988, the Family Court found that 13 *Del.C.* § 513(d)(2), which became effective on March 31, 1987, did not affect the terms of the Agreement.

We find that the scope of the Father's support obligation in this case is controlled by the terms of paragraph 15 of the Agreement. The pertinent part of paragraph 15 states:

> On or before April 15th of each and every year, the parties shall exchange their respective W–2 Forms and shall recalculate Husband's child support obligation in accordance with the aforesaid Melson Formula. Any recalculated support obligation shall become effective with the payment commencing May 1st of that year.

The Father's obligation under paragraph 15 requires him to pay an amount of child support as annually recalculated using the Melson Formula. *The annual recalculation is not a retroactive modification of child support,* but reflects the enforcement of an existing Agreement, the terms of which are controlled by paragraph 15. Therefore, we affirm the Family Court's ruling with respect to this issue.

■ Alternatively, the Father argues that it would be unfair to enforce the Agreement when the Mother failed to abide by its terms. The Agreement called for exchange of income tax information by

---

19, 1986, following a *de novo* review, pursuant to 10 *Del.C.* § 913(c), of an order of a Master, dated May 1, 1986, the Family Court recalculated the Father's child support obligation to $351 per month for the twelve-month period, beginning May 1, 1986. A December 21, 1988 order recalculated the Father's child support obligation to $958 per month effective May 1, 1987. On June 30, 1989, the Family Court ordered the Father's child support obligation changed to

$773 per month as of May 1, 1988, and concurrently awarded the Mother $3,378 in attorneys fees associated with both the 1987 and 1988 recalculations.

4. The Mother admits she did not mail the Father notice of this suit as defined in Section 513(f) until February, 1988.

May 1st each year. On April 24, 1987, counsel for the Father wrote to the Mother enclosing the Father's 1986 W-2 and requesting the Mother's 1986 W-2 through her attorney. The Mother refused to exchange her tax information until October 27, 1988.

The Family Court held that it would be inequitable to deny the child support, or to reduce the amount of support that the Father should be required to pay, because of the Mother's actions. *See Lucy K.H. v. Carl W.H.*, Del.Fam., 415 A.2d 510, 514 (1979). Even though the Mother failed to perform a condition precedent to the recalculation which was required by the Agreement, the Family Court properly considered the best interests of the child. We find no abuse of discretion and also affirm that ruling on this issue.

### Stock–Option Income

The second issue which the Father raises in this appeal is whether the Family Court's decision concerning the 1987 recalculation, properly applied the Melson Formula by including, as part of his income, the taxable profits which were realized when he exercised certain stock options. In 1977, the Father's employer gave him an option to purchase stock at $25.866 per share. On April 1, 1985, when that stock was selling for $73 per share, the Father partially exercised that stock option thereby realizing a profit of $22,058.40. The profit, which reflected the difference between the option price and the market price, was included on the W-2 form provided by the Father's employer and was taxed as ordinary income in 1985.[5] The W-2 which the Father received from his employer for 1986 reflects that additional stock options were exercised in that year and profits of $51,845 were realized.

---

**5.** The Father's basis for the stock became $73 per share.

**6.** The Father's W-2 reflects that the stock options from his employer were included in his taxable income. When determining net income or cash flow for child support purposes, the Family Court is not bound by usual accounting

The procedure used by the Delaware Family Court to determine the amount of child support to be paid is known as the Melson Formula. *Dalton v. Clanton*, Del.Supr., 559 A.2d 1197, 1210 (1989). This Court has recognized the validity of that procedure. *Id.* The first step of the Melson Formula requires the Family Court to determine each support obligor's net income.[6] The Delaware General Assembly has defined "income" with regard to child support obligations as:

> *any form of payment made by the obligor's employer* to an individual, regardless of source, including, but not limited to, wages, salary, commission, vacation pay, severance pay, bonuses, compensation as an independent contractor, workers' compensation, disability, sick pay, SUB benefits, unemployment compensation, railroad retirement, pensions, annuity and retirement benefits; provided, however, that income excludes:
>
> a. Any amounts required by law to be withheld, other than creditor claims, including, but not limited to, federal, state and local taxes, Social Security and other mandatory retirement and disability contributions;
>
> b. Union dues;
>
> c. Any amounts exempted by federal law;
>
> d. Public assistance payments; and
>
> e. Tax refunds, which shall be governed by §§ 1205–1209 of Title 30 and § 454 of the Social Security Act (42 U.S.C. § 654).

13 *Del.C.* § 513(b)(5) (emphasis added). Although the profits which are realized when an employee exercises an option to purchase his employer's stock, at a discounted price, are not explicitly mentioned in the statute, such options are analogous to a "bonus" and are included within the phrase "any form of payment made by the obligor's employer" in Section 513(b)(5). We

---

principles or tax accounting as "the purposes behind tax regulations are not the same as those codified in 13 *Del.C.* [ch. 5] pertaining to child support." *R.T. v. R.T.*, Del.Supr., 494 A.2d 150, 153 (1985). Nevertheless, any departure from these basic principles should be fair and reasonable under the circumstances. *Id.*

find that the Family Court correctly decided to include the profits realized from the exercise of the employee stock option when determining the Father's net income.

Nevertheless, the conclusion that the Father's stock option profits should properly be included within the income component of the Melson Formula's equation is not determinative of whether the Family Court properly applied the Melson Formula in its entirety. This Court has "attach[ed] particular significance to the fact that the Melson Formula is recognized and operates as a rebuttable presumption in all child support cases." *Dalton v. Clanton*, 559 A.2d at 1211 (footnote omitted). We stated:

> The mathematical result which is the product of the Melson Formula can never be the basis of a child support order under the Delaware procedure, until that result passes the litmus test of the rebuttable presumption. When the calculation according to the Melson Formula is mixed together with the specific facts in a case, the result must be equitable. If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case.

*Id.* at 1212.

The Father argues that, even if the $51,845 in stock option profits were properly included within the income component of the Melson Formula, the Family Court did not apply the litmus test of the rebuttable presumption to the mathematical result before it. In support of his argument, the Father points out that when the Family Court decided to order the Father to pay child support, in accordance with the mathematical result, it simply stated "there had

been no testimony why the stock options were not valuable remuneration." The Father argues that the Family Court failed to address whether presumptive applicability of the mathematical result, which was the product of the Melson Formula, had been rebutted by his showing that the income component of the equation in his case includes a non-cash asset, i.e., stock.

We find that the Family Court's decision concerning the 1987 recalculation, was based upon an incomplete analysis. The Father's argument required the Family. Court to examine the child's needs, the Father's income, and the prospect of requiring the Father to liquidate[7] his stock holdings to pay child support in accordance with the mathematical result reached by the Melson Formula. In fact, in its opinion regarding the 1986 recalculation in this case, the Family Court did consider those issues and concluded that the Father had rebutted the presumptive applicability of the mathematical result which was the product of the Melson Formula:

> [T]he ownership of the stock as noted in the Company stock registry and as evidenced by stock certificates does not provide him with any additional monies to use to pay child support. In those cases where a support obligor is employed and earning ample wages from which adequate child support can be paid, this Court customarily does not require that the obligor liquidate his or her assets for the purpose of paying even more support.
>
> ... It is my understanding that IRS taxes this paper profit today to insure payment of taxes on the actual gain and not just on a gain calculated on the dif-

---

7. Evidence that assets would have to be liquidated does not conclusively rebut the applicability of the mathematical result which is produced by the Melson Formula. After balancing the equities in another case, this Court held that it would be unfair to a child, despite his father's incarceration, not to order liquidation of the father's assets to meet his child support obligation, i.e., the presumptive applicability of the result represented by a mathematical application of the Melson Formula had not been rebutted. *DCSE, ex rel. Harper v. Barrows*, Del.Supr., 570 A.2d 1180, Holland, J. (1990). Nevertheless, whether or not assets would have to be liquidated is an important consideration which should be addressed, when it is raised as a challenge to the presumptive applicability of the mathematical result which is produced by the Melson Formula. In its decision regarding the 1987 recalculation, the Family Court never made a finding as to whether the stock, or any other asset, would have to have been sold by the Father in order to meet his child support obligation, if the stock profits which he realized were not removed from the income component of the Melson Formula.

ference between the future selling price and today's market price.

In the application of the Melson Formula to this case, consideration of the paper profit realized in the exercise of the 'AIG' stock options must be excluded.[8]

The Father contends that this Court should not look beyond the decision of the Family Court with regard to the 1986 recalculation, since, in that year, the Father's stock option profits were excluded from the income component of the Melson Formula and that ruling was not appealed. Relying upon the "law of the case" doctrine, the Father argues that the Family Court's initial ruling should stand as a bar to further litigation on the question of whether stock option profits should be removed from his income, when recalculating his support obligation in years subsequent to 1986. *Frank G.W. v. Carol M.W.*, Del.Supr., 457 A.2d 715, 718 (1983). We find that the Father's argument is not supported by a proper application of that doctrine. *Id.*

■ The "law of the case" is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation. *Id.* The facts which are relevant to a proper evaluation of a petition to modify an order to pay child support are never static. As children pass through their minority, their needs often change, as does their parents' ability to support them. Even within the context of determining the support obligation for a single child, like this case, it may be necessary for the Family Court to periodically adjust the placement of the fulcrum upon which its decision rests. As a rebuttable presumption, the Melson Formula operates

as a recognition that the Family Court may have to move away from a prior position, in reaching a subsequent decision, in order to bring the evolving equities into balance.

■ In this case, the subsequent facts which were presented to the Family Court may or may not have supported a conclusion that it would have been equitable to order the Father to pay child support in accordance with the mathematical result which was the product of the Melson Formula. However, since the Family Court failed to acknowledge that the Melson Formula operates as a rebuttable presumption, we are unable to meaningfully review the order entered concerning the Father's 1987 support obligation. We find that the Family Court abused its discretion in not addressing the Father's contention that presumptive applicability of the mathematical result of the Melson Formula had been rebutted. Accordingly, we reverse its decision with regard to the 1987 child support order and remand that issue to the Family Court. *Dalton v. Clanton*, 559 A.2d at 1212.

### Attorney Fees

■ The Father's final contention is that the Family Court abused its discretion in awarding the Mother attorney fees. *Ann Marie H. v. Joseph J.H.*, Del.Supr., 456 A.2d 1233, 1235 (1983); *Husband B.W.D. v. Wife B.A.D.*, Del.Supr., 405 A.2d 123, 125 (1979); *Husband D.M. v. Wife D.*, Del. Supr., 399 A.2d 847, 848 (1979). We find that the award of attorney's fees was related, in part, to the recalculation of the Father's child support obligation. Since we have concluded that the analysis which led to the award of child support was incomplete, it follows that the award of attorneys

---

**8.** The Family Court's decision regarding the 1986 recalculation found that the stock option profit did not provide the Father with additional cash to use to pay child support. It also found that if the stock option profits were removed from the income component of the Melson Formula, the mathematical result would provide for a child support award in an adequate amount. Admittedly, in that opinion, which removed the stock option profits from the income component, the Family Court should have made a specific finding whether the Father

would have had to liquidate some or all of the stock to meet his child support obligation, if it was determined solely by a mathematical application of the Melson Formula. Nevertheless, it appears that the Family Court's 1986 decision concluded that the presumptive applicability of the Melson Formula had been rebutted even if the Father would not have had to liquidate any stock. This is precisely the type of analysis and factual examination which the Family Court was required to undertake before making its decision regarding the 1987 recalculation.

fees may have been based upon an inaccurate premise. Therefore, when this matter is remanded to the Family Court for the purpose of redetermining the issue of child support, the Family Court is also directed to reconsider its award of attorneys fees, and to state the reasons for its final decision on that issue.[9]

### Conclusion

The decision of the Family Court concerning the effective starting date of the Father's obligation to pay child support, when it is ultimately determined, is AFFIRMED. The decision of the Family Court concerning the amount of child support which the Father should pay is REVERSED and REMANDED for further proceedings in accordance with this opinion. The decision of the Family Court to award the Mother attorney fees is REVERSED and REMANDED for reconsideration.

---

9. The Mother has acknowledged in this appeal that even if an award of attorney fees was proper, the amount of the award in this case was incorrect.