# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HARTREE NATURAL GAS STORAGE, LLC, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. N22C-05-081 PRW |
| | ) | CCLD |
| AIG SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant.* | ) | |

Submitted: September 11, 2025
Decided: December 9, 2025

*Upon Defendant AIG Specialty Insurance Company's
Motion for Summary Judgment,*
**DENIED**.

## MEMORANDUM OPINION AND ORDER

David J. Baldwin, Esquire, and Peter C. McGivney, Esquire, BERGER MCDERMOTT LLP, Wilmington, Delaware; Christine S. Haskett, Esquire (*argued*), Hakeem S. Rizk, Esquire, Billie Mandelbaum, Esquire, David A. Luttinger, Jr., Esquire, COVINGTON & BURLING LLP, San Francisco, California, *Attorneys for Plaintiff Hartree Natural Gas Storage, LLC*.

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire (*argued*), and Denise S. Kraft, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, *Attorneys for Defendant AIG Specialty Insurance Company*.

**WALLACE, J.**

This Memorandum Opinion and Order resolves AIG Specialty's Motion for Summary Judgment. For the reasons explained now, that motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE REMAINING PARTIES

Plaintiff Hartree Natural Gas Storage, LLC, is a Delaware limited liability company that operates out of Texas and is the named insured on the insurance policies at issue in this action.[1] Defendant AIG Specialty Insurance Company is an Illinois corporation with its principal place of business in New York.[2]

### B. THE UNDERLYING TRANSACTION AND RELATED INSURANCE

In June 2021, Hartree entered into a Membership Interest Purchase Agreement with PAA Natural Gas Storage, L.P. ("PAA"), in part for the acquisition of the Pine Prairie Energy Center.[3]

In connection with the MIPA, Hartree purchased buyer-side representations

---

* The most recent iteration of this case's caption included the numerous former Insurer-Defendants—North American Capacity Insurance Company, Aspen Specialty Insurance Company, General Security Indemnity Company of Arizona, and Steadfast Insurance Company—and Euclid Transactional, LLC. *See generally* Second Amended Complaint ("Compl.") (D.I. 212). These long-dismissed defendants were the primary-layer insurers and the underwriting representative. *Id.*, ¶¶ 1, 17; D.I. 170. Since-dismissed Liberty Surplus Insurance Corporation was the first-layer excess insurer. Compl. ¶ 18; D.I. 330. For simplicity, the Court now uses just the names of the two remaining parties.

[1]    Compl. ¶ 8.

[2]    Compl. ¶ 10; AIG provided the second excess layer of the buyer-side representations and warranties insurance at issue here. *Id.*, ¶¶ 17, 19.

[3]    AIG's Mot. for Summ. J., Ex. D (D.I. 335) [hereinafter the "MIPA"].

and warranties insurance policies from the Insurers.[4]  Euclid issued the primary policy, which provided $25,000,000 in coverage in excess of a $6,375,000 retention.[5] Liberty issued the first excess layer policy for $25,000,000 of coverage for Hartree's Loss in excess of its primary policy.[6]  And Hartree's policy with AIG is its second excess policy of $13,750,000.[7]  This means that AIG's policy is only triggered if Hartree's losses are in excess of $56,375,000.[8]

After Hartree officially acquired the Pine Prairie Energy Center, it found various issues.[9]  Hartree told its insurers that it may have "overpaid for the acquisition of Pine Prairie" and that "Hartree's Loss under the Policy will also include the amount that [it] overpaid for the acquisition that is above the cost of replacing the Base Gas."[10]  When Hartree sought confirmation that its losses would be covered, the Insurers denied coverage.[11]

---

[4]  *See, e.g.*, AIG's Mot. for Summ. J., Ex. F [hereinafter "Euclid Primary Policy"]; *see also* AIG's Mot. for Summ. J., Ex. H [hereinafter "AIG Second Excess Policy"].

[5]  *See generally* Euclid Primary Policy.

[6]  *See* AIG Second Excess Policy at 2 (referencing the Liberty policy).

[7]  AIG Second Excess Policy.

[8]  *See* AIG Second Excess Policy at 2; *see also* Mot. for Summ. J., at 7; Hartree's Answering Br., at 25 (D.I. 337).

[9]  *See generally* Hartree's Answering Br., Ex. A [hereinafter "Hartree's May 3, 2022 Letter"].

[10]  Hartree's May 3, 2022 Letter, at 4.

[11]  Hartree's Answering Br., Ex. E, at 3 ("We reiterate our position that Hartree's Loss does not reach AIG Specialty's layer.") [hereinafter "AIG Coverage Emails"].

**C. THIS COVERAGE SUIT**

This suit was brought against the insurers seeking coverage for those purported losses. Hartree's complaint now effectively has two remaining counts: a request for declaratory judgment against AIG (Count I);[12] and a breach-of-contract claim against AIG (Count II).[13]

This action was stayed pending this Court's decision in the underlying fraud action Hartree brought against PAA.[14] There, the Court found for Hartree in the amount of $30,247,277.60—the loss incurred for the missing gas at the time of the transfer of Pine Prairie.[15]

Now before the Court is Defendant AIG's motion for summary judgment.[16]

**1. Relevant Policy Language**

AIG's second excess insurance policy for loss is not triggered "unless and until the aggregate limits of liability of the Underlying Insurance have been exhausted and/or exceeded . . . ."[17]

---

[12]  Compl. ¶¶ 72−78.

[13]  Compl. ¶¶ 79−85.

[14]  D.I. 32.

[15]  *Hartree Nat. Gas Storage, LLC v. PAA Nat. Gas Storage, L.P.*, 2025 WL 101638, at *15 (Del. Super. Ct. Jan. 15, 2025) [hereinafter "*Hartree v. PAA*"].

[16]  D.I. 335.

[17]  AIG Second Excess Policy at 6.

Loss, as defined by the primary policy, is:

"Loss" means the aggregate of (i) any loss, liability, demand, claim of any kind, action, cause of action, cost, damage, fee, deficiency, Tax, penalty, fine, assessment, interest or expense (including the amount of Damages that the Insureds have incurred, suffered, sustained, paid, or become subject to), in each case, arising out of or resulting from any Breach (other than Defense Costs and Prosecution Costs), (ii) any Defense Costs, and (iii) any Prosecution Costs, in each case, determined without regard or giving effect to, and ignoring any reference to, the Limitation Provisions or the Materiality Qualifiers, as if such words, clauses or phrases, as applicable, were deleted from the applicable provision in the Acquisition Agreement or the Certificates.[18]

But "Loss" is reduced by any "Recovered Amount":

Recovered Amounts. Loss shall be reduced by any Recovered Amounts. For the avoidance of doubt, to the extent any Recovered Amount is received or realized after payment by the Insurers hereunder, such Recovered Amount shall be applied in the following order: first, to reimburse the Insureds for any Loss borne by them in excess of the Limit of Liability; second, to reduce any Loss incurred by the Insureds which is covered by this Policy; and third, to reimburse the Insureds in respect of any Loss which the Insureds have retained by reason of the Retention.[19]

The primary policy also has a "mitigation" clause, which states:

To the extent required by applicable law, the Insureds shall use commercially reasonable efforts within their control, including, to the extent commercially reasonable, making requests or demands of third parties, to mitigate any Loss or potential Loss after any Specified Person has Actual Knowledge of any event which would reasonably be expected to give rise to any Loss; provided that the failure of any

---

[18] Euclid Primary Policy § II(Z).

[19] Euclid Primary Policy § IV(C). "Recovered Amount" is defined as "in relation to any Loss, the net amount (after any reasonable costs and expenses incurred in connection with such recovery) of any related offsetting recoveries . . . that have been actually received by the Insureds[.]" Euclid Primary Policy § II(KK).

Insured to so mitigate shall only reduce the rights of the Insureds to recover for Loss under this Policy to the extent of the Loss that would have been avoided by such mitigation, and the burden of proving such amount shall be on the Insurers and shall not otherwise diminish or delay coverage or payment hereunder; provided further, that, except as provided in Section VIII.B in connection with the subrogation rights of the Insurers, the Insureds shall not be required or obligated to seek recovery or recourse under the Acquisition Agreement or otherwise from Seller or any of its direct or indirect equityholders or Affiliates or any other person [20]

Also, the policy sets subrogation rights:

[For] cases of Fraud by a Seller Party in connection with the Acquisition Agreement and the transactions contemplated thereby . . . [i]n no event (including, for the avoidance of doubt, prior to payment of Loss under this Policy) shall the Insureds knowingly and intentionally waive any rights [of the Insurer] in a manner that would reasonably be expected to actually prejudice any such subrogation or assignment right.[21]

## 2. The Underlying Trial—*Hartree v. PAA*

During the underlying litigation, Hartree introduced two separate damages calculations. The first—which was the only one ultimately presented to the jury and the Court—claimed damages of about $55 million for the cost of replacing missing gas.[22] Under the second, Hartree claimed damages of $90 million for the amount that it allegedly overpaid for the entire transaction based on a discounted cash flow.[23]

---

[20] Euclid Primary Policy § VIII(A).

[21] Euclid Primary Policy § VIII(B)(i).

[22] *See, e.g.*, AIG's Mot. for Summ. J., Ex. C at 26 [hereinafter "May 13 Trial Tr."].

[23] May 13 Trial Tr. at 56.

But that $90 million damages calculation was abandoned by Hartree during trial.[24]

At the conclusion of trial, the Court issued an opinion awarding Hartree approximately $30 million—which was equivalent to the value of the missing gas at the time of the sale along with certain other related expenses.[25]  Subsequently, Hartree and PAA entered into a post-trial Settlement Agreement.[26]  The Settlement Agreement states that "neither this Agreement nor any pleading, ruling, or finding in the Lawsuit (including but not limited to the Verdict and the Decision) may be taken or admissible in any future proceeding as an admission or finding of any liability or wrongdoing."[27]

## II.  PARTIES' CONTENTIONS

AIG moves for summary judgment on the theory that the judgment in the $30 million "missing gas" litigation against PAA absolves it of any obligation to provide coverage, because that $30 million figure falls well below where any trigger of its coverage.[28]  At bottom, AIG contends that Hartree cannot litigate the PAA claim for

---

[24]  *Id*. at 56 ("And all I want to point out is that when we brought up $90 million, that that was something that was still technically live in the case and we aren't making up that number out of whole cloth.  And I want to point out he prepared an opinion and he's no longer offering it. That's it.").

[25]  *Hartree v. PAA*, 2025 WL 101638, at *15.

[26]  AIG's Mot. for Summ. J., Ex. B [hereinafter "Settlement Agreement"].  Exhibit B refers to the settlement agreement that was submitted *in camera* on April 2, 2025. *See* D.I. 331 (Letter transmitting exhibit in paper form only for *in camera* review).

[27]  Settlement Agreement ¶ 5.

[28]  *See generally* AIG's MSJ Opening Br. at 1 (D.I. 335).

$30 million and then seek from its insurers additional amounts substantially exceeding that figure.[29]   AIG grounds its motion in five procedural and substantive doctrines—claim preclusion, judicial estoppel, quasi-estoppel, waiver, and law of the case.[30]   In sum, AIG asks the Court to hold that Hartree is barred from asserting that it is entitled to more than the $30 million it sought from PAA, and therefore the claimed loss is insufficient to trigger coverage under the policy.

Hartree says that AIG is required to cover losses "without having to prove fraud and without any requirement that Hartree pursue the Seller for such loss."[31] Put simply, Hartree insists that AIG contracted to pay Hartree for *all* of its losses related to breach of MIPA representations and warranties regardless of whether it pursued PAA for those losses.[32]   It says that "Loss" as defined in the coverage agreements isn't tied to the suit against PAA, so it isn't limited by the Court's ruling or the damages it sought there.[33]

## III. STANDARD OF REVIEW

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits show there is no

---

[29]   *Id.* at 20−34.

[30]   *Id.* at 23−34.

[31]   Hartree's Answering Br. at 2.

[32]   *Id.* at 2−3.

[33]   *Id.* at 11−13.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[34] The movant bears the initial burden of proving its motion is supported by undisputed facts.[35] If the movant meets its burden, the non-movant must show there is a "genuine issue for trial."[36] To determine whether a genuine issue exists, the Court construes the facts in the light most favorable to the non-movant.[37] Although summary judgment is encouraged when possible, there is no "right" to summary judgment.[38]

The "Court may not be able to grant summary judgment if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record."[39] And the Court will not grant summary judgment if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[40] But "[i]f the Court finds that no genuine issues of material

---

[34] Del. Super. Ct. Civ. R. 56(c); *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at *7 (Del. Super. Ct. Nov. 30, 2021).

[35] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).

[36] Del. Super. Ct. Civ. R. 56(e); *see also Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) ("If the facts permit reasonable persons to draw from them but one inference, the question is ripe for summary judgment.").

[37] *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977) (citation omitted).

[38] *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1034 (Del. Super. Ct. 2023) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (internal quotation marks and citation omitted)).

[39] *Radulski v. Liberty Mutual Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Ct. Oct. 28, 2020) (cleaned up).

[40] *Ebersole v. Lowengrub*, 180 A.2d 467, 468−69 (Del. 1962) (citation omitted).

fact exists, and the moving party has demonstrated [its] entitlement to judgment as a matter of law, then summary judgment is appropriate."[41]

## IV.  DISCUSSION

The Court begins by considering AIG's effort to use the prior *Hartree v. PAA* opinion to bar Hartree's pursuit of its $90 million damages theory in this action. After reviewing AIG's various preclusion-based theories, the Court concludes that the earlier decision does not prevent Hartree from advancing that alternative measure-of-damages theory here.  The Court then turns to AIG's arguments grounded in the policy itself, including disputes over subrogation and mitigation. Because the record reflects competing factual accounts and unresolved questions regarding the parties' conduct, intentions, and communications, the Court determines that these issues cannot be resolved on summary judgment.  As a result, AIG is not entitled to judgment as a matter of law and its motion must be **DENIED**.

### A.  THE RESULT OF THE *HARTREE V. PAA* SUIT DOESN'T PRECLUDE THIS REMAINING ACTION AGAINST AIG AND HARTREE'S $90 MILLION DAMAGES THEORY.

The Court addresses AIG's preclusion arguments in three parts. First, collateral estoppel does not bar Hartree's $90 million damages theory because the

---

[41]  *Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. Aug. 23, 1996) (citing *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322 (Del. Super. Ct. 1973)); *see also Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999) ("However, a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary." (citing *State ex rel. Mitchell v. Wolcott*, 83 A.2d 759, 761 (Del. 1951)).

theory was never litigated, decided, or necessary to the judgment in *Hartree v. PAA*, where Hartree had withdrawn it before or during trial. Second, neither judicial estoppel nor quasi-estoppel applies, as the Court did not adopt or rely on Hartree's withdrawal, Hartree took no inconsistent position that induced a judicial ruling, and Hartree gained no benefit that would make its current position unconscionable. Third, AIG's waiver and law-of-the-case theories fail because both doctrines operate only within the same litigation and cannot carry over to a separate action with different parties. Accordingly, none of the doctrines AIG attempts to invoke preclude Hartree from pursuing its alternative $90 million damages claim in this case.

### 1. Collateral Estoppel doesn't bar the $90 Million calculation.

AIG argues that collateral estoppel bars Hartree's claim expressing the notion that the Court's prior decision resolved the claim in AIG's favor.[42] But collateral estoppel doesn't bar Hartree's $90 million damages theory because the theory was never actually litigated or decided in the earlier *Hartree v. PAA* action, and the prior judgment does not—and could not—resolve an issue the Court was never asked to adjudicate.[43] The doctrine of collateral estoppel, also known as issue preclusion,[44]

---

[42] AIG's MSJ Opening Br., at 3−5, 23−25. While AIG never directly argues collateral estoppel by name, its cumulative preclusive theories essentially add up to it. So, for the sake of completeness and the avoidance of doubt, the Court conducts this collateral estoppel analysis.

[43] May 13 Trial Tr. at 56. *See generally Hartree v. PAA*, 2025 WL 101638.

[44] *Hernandez v. Baird Mandalas Brockstedt & Federico, LLC*, 315 A.3d 1183, 1188 (Del. Super.

-10-

is issue-specific; it precludes only those determinations that were squarely before the Court, fully litigated, and necessary to the outcome of the first proceeding.[45] "Further, . . . that party must have had a 'full and fair opportunity to litigate the issue in the prior action.'"[46] "The party asserting collateral estoppel has the burden of showing that the issue was already decided in the first proceeding."[47]

AIG cannot shoulder its burden because the $90 million issue was never part of the adjudicative basis of the prior judgment. No doubt the post-trial opinion in *Hartree v. PAA* constitutes a final decision on the merits on the remaining claims and defenses left there by then.[48] But the opinion resolves only one question: whether Hartree proved damages arising from missing gas-in-place.[49] By the time of trial's end, Hartree had withdrawn its alternative $90 million loss-of-sale-value theory.[50] Hartree expressly told the Court that the $90 million figure was no longer being

---

Ct. 2024), *aff'd*, 341 A.3d 473 (Del. 2025).

[45]   *Arch Ins. Co. v. Murdock*, 2018 WL 1129110, at *5 (Del. Super. Ct. Mar. 1, 2018) ("The doctrine of collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously.") (citation omitted); *Proctor v. State*, 2007 WL 2229013, at *1 (Del. Aug. 2, 2007) (citing *Sanders v. Malik*, 711 A.2d 32, 33−34 (Del. 1998)) ("A claim will be collaterally estopped only if the same issue was presented in both cases, the issue was litigated and decided in the first case, and the determination was essential to the prior judgment.").

[46]   *Arch Ins. Co.*, 2018 WL 1129110, at *6 (citations omitted).

[47]   *Troy Corp. v. Schoon*, 959 A.2d 1130, 1134 (Del. Ch. 2008) (citations omitted).

[48]   *See Troy Corp.*, 959 A.2d at 1134 (discussing a court's prior ruling in a different action and deeming that the ruling was a final adjudication on the merits).

[49]   *See generally Hartree v. PAA*, 2025 WL 101638.

[50]   May 13 Trial Tr. at 56.

offered.[51]  And Hartree didn't pursue the issue in argument,  provide a damages model, or seek findings related to that valuation.  The only tried claim was the narrower, physical-inventory-based missing-gas claim.[52]

The Court never reached—and, indeed, had no need or ability to reach—any findings about the broader value impact of the deal as a whole.  The opinion contains no fact-finding on the alleged $90 million diminution, no credibility determinations regarding overall valuation evidence, and no legal conclusions regarding alternative measures of damages.[53]  That is the natural consequence of an issue not tried. Accordingly, collateral estoppel doesn't bar the $90 million damages theory.  The issue of the alleged $90 million loss from the overall deal hasn't been "decided" and was not "essential to the prior judgment."[54]

### 2. Hartree's choice to forgo the $90 Million calculation in the *Hartree v. PAA* litigation is not inconsistent with its current claim against AIG.

AIG next insists that Hartree's $90 million damages theory should be barred because Hartree did not pursue that theory in the *Hartree v. PAA* litigation.[55] AIG makes this argument incanting both judicial estoppel and quasi-estoppel.  But neither

---

[51]  *Id.*  Too, Hartree offered no expert testimony on the $90 million loss-of-sale-value issue during trial and didn't raise it at closing. *Id.*

[52]  *See generally Hartree v. PAA*, 2025 WL 101638.

[53]  *See id.*

[54]  *Proctor*, 2007 WL 2229013, at *1.

[55]  AIG's MSJ Opening Br. at 31−33.

fits.

Judicial estoppel applies only when a party previously took a position that a court accepted as the basis for its ruling, and then later takes a position that is irreconcilably inconsistent with that judicially-adopted position.[56] "The party's prior position will be considered a 'basis' for the court's ruling where (i) the prior position 'contributed to the court's decision'; (ii) the court 'relied' on the party's prior position; or (iii) the party's newly inconsistent position 'contradicts' the court's ruling[.]"[57] "[J]udicial estoppel is only appropriate where the party against whom it is asserted has taken irreconcilably inconsistent positions."[58]

That never happened here. The *Hartree v. PAA* Court did not adopt Hartree's withdrawal of the $90 million theory, did not rely on it, and made no findings about it.[59] The theory simply fell out of the case because Hartree did not pursue it. The Court's decision on the remaining damages theory does not create any inconsistency with Hartree's position now. At most, Hartree made a tactical narrowing of issues

---

[56] *Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 2018 WL 3360976, at *4 (Del. July 10, 2018) (quoting *Motorola Inc. v. Amkor Tech, Inc.*, 958 A.2d 852, 859−60 (Del. 2008)) ("Judicial estoppel applies when a litigant's position 'contradicts another position that the litigant previously took and that the Court was successfully induced to adopt in a judicial ruling.'"). This includes when the court "accept[s]" the position "as a basis for its ruling." *Chandler v. Bayhealth Med. Ctr., Inc.*, 2024 WL 4977010, at *11 (Del. Super. Ct. Dec. 4, 2024).

[57] *Chandler v. Bayhealth Med. Ctr., Inc.*, 2024 WL 4977010, at *11 (Del. Super. Ct. Dec. 4, 2024) (quoting *In re Rural/Metro Corp. Stockholders Litigation*, 102 A.3d 205, 247 (Del. Ch. 2014)).

[58] *Id.* at *12 (citation omitted).

[59] *See* AIG Reply Br. at 16 (D.I. 339); *see generally Hartree v. PAA*, 2025 WL 101638.

in a prior case against a different party, but litigation strategy is not an irreconcilable inconsistency, and judicial estoppel does not transform abandoned arguments into permanent waivers across lawsuits involving different adversaries.[60]

AIG's quasi-estoppel theory fails for two independent reasons. First, nothing about Hartree's conduct in the PAA litigation rises to the level of unconscionability required to invoke the doctrine.[61]

> Under Delaware law, the doctrine of quasi-estoppel applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another."[62]

AIG's asserted "prejudice"—that it must now confront a damages theory Hartree chose not to pursue against PAA—does not meet that standard. The prospect of

---

[60] Although the mid-litigation change may be seen as contradictory to Hartree's claims against its insurers, it is not enough so to be deemed an "irreconcilably inconsistent position[]" nor in anyway worthy of an engagement of judicial estoppel. *See Chandler*, 2024 WL 4977010, at *12; *id.* at 11 (describing judicial estoppel: "Judicial estoppel is an extraordinary, discretionary, and equitable remedy that acts to preclude a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding . . . to protect the integrity of the judicial proceedings.") (cleaned up).

[61] *N. Data AG v. Riot Platforms, Inc.*, 2025 WL 1661855, at *16 (Del. Ch. June 2, 2025) (one invoking quasi-estoppel must clear a "high bar to show unconscionability"); *Pers. Decisions, Inc. v Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008), *aff'd*, 2009 WL 685163 (Del. Mar. 17, 2009); *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016) ("Unconscionability is a concept that is used sparingly.").

[62] *RBC Cap. Markets, LLC v. Jervis*, 129 A.3d 816, 872−73 (Del. 2015) (quoting *Bank of N.Y. Mellon v. Commerzbank Capital Funding Trust II*, 2011 WL 3360024, at *8 n.71 (Del. Ch. Aug. 4, 2011)).

additional litigation expense or effort is not the kind of detriment that renders an opponent's position unconscionable.[63] At most, Hartree's earlier decision may complicate matters for AIG, but it does not impose the type of unfair disadvantage to AIG that quasi-estoppel is designed to prevent.[64]

Second, the doctrine also requires that the party now changing positions must have previously accepted some "benefit" from its earlier stance.[65] Hartree received no such benefit. By withdrawing the $90 million theory during the PAA trial, Hartree secured no ruling, gained no tactical advantage, and imposed no prejudice on any party.

Ultimately, AIG's estoppel arguments rest on a belief that once Hartree abandoned its quest for $90 million loss-of-sale-value damages in the PAA action, it was forever barred from asserting that theory of damages anywhere else. But that's not the law. Strategic decisions made in one case don't become irrevocable waivers in all future litigation involving different parties. Neither judicial estoppel nor quasi-

---

[63] *See N. Data AG*, 2025 WL 1661855, at *16 (opponent's claim wouldn't be disallowed merely because an invoking party is "forc[ed] . . . to undergo an expensive and time-consuming accounting proceeding only to raise the issues anew in this litigation.") (quotation omitted).

[64] *RBC Cap. Markets*, 129 A.3d at 873 (stockholders' change in position was not unconscionable when it was a natural outcome of the settlement process); *N. Data AG*, 2025 WL 1661855, at *17 (discussing that it is not unconscionable when a party must "relitigate" issues already addressed).

[65] *N. Data AG*, 2025 WL 1661855, at *16 (citing *Pers. Decisions*, 2008 WL 1932404, at *6) ("The party invoking quasi-estoppel must show how it would be 'unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'").

estoppel prevents Hartree from advancing its alternative damages theory here.

### 3. Hartree Did Not Waive Its Claim.

Third and similarly to the other two AIG preclusivity theories, AIG also argues waiver and law-of-the-case theories. Under both theories AIG posits that because the prior case touched similar facts, any tactical choice by Hartree or decision by a Court must carry through in this subsequent litigation. But neither doctrine works that way. AIG discusses the allegation of waiver in its briefing thusly:

> Hartree had the opportunity to argue its alternative damages theory to the jury and the Court in the Fraud Litigation but instead made a conscious decision to drop its alternative damages theory during the trial. Hartree's desire to change course now should be rejected.[66]

But waiver, even when framed broadly, is fundamentally tied to the context in which it occurs: A party *can* waive a right in a particular proceeding, but there is nothing to suggest that waiver applies outside of the litigation where it occurred, especially when there are different parties.[67] AIG tries to repackage its waiver theory by saying that the waiver carried over through the policy's subrogation clause.[68] But that only shifts the analysis to what the contract might restrict—not whether Hartree somehow carried a *procedural* waiver from one case into another.

---

[66] AIG's MSJ Opening Br. at 26 (citations omitted).

[67] AIG attempts to rely on *Julian v. E. States Const. Serv., Inc.* to suggest that waiver can apply to other litigation. AIG Reply Br. at 11. But in that case, the suit was bifurcated. *Julian v. E. States Const. Serv., Inc.*, 2009 WL 1211642, at *1 (Del. Ch. May 5, 2009). Not so here. The parties in the two suits are not the same; this coverage claim is wholly separate, not one bifurcated.

[68] AIG's MSJ Opening Br. at 28−30.

The same conceptual problem undermines AIG's attempt to rely on the "law of the case."[69] The "law of the case" is established when a specific legal principle is applied to an issue presented when "the material facts have remained constant throughout the subsequent course of the same litigation."[70] The rule doesn't extend outside of the litigation at issue; "[i]n more simplified terms, the law of the case doctrine operates as a form of intra-litigation stare decisis."[71] The law of the case is "generally held to be the law of *that case* and will not be disturbed by that court unless compelling reason to do so appears."[72] The rule is meant to preserve *consistency* within a single judicial proceeding—not to let a party lift an outcome from one lawsuit and superimpose it onto a different one.[73] The doctrine does not

---

[69]  *Id.* at 30−31.

[70]  *T.V. Spano Bldg. Corp. v. Dep't of Nat. Res. & Env't Control*, 1992 WL 1364297, at *1 (Del. Super. Ct. Sept. 3, 1992), *aff'd*, 628 A.2d 53 (Del. 1993) (citing *Frank G.W. v. Carol M.W.*, 457 A.2d 715 (Del. 1983); *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990)); *Frederick-Conaway v. Baird*, 159 A.3d 285, 296 (Del. 2017) ("The law of the case is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation. The doctrine, by its terms, contemplates one continuous action within the same court system.") (cleaned up).

[71]  *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *7 (Del. Ch. Sept. 10, 2015) (citations omitted).

[72]  *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003), *aff'd*, 2004 WL 1656965 (Del. July 16, 2004) (quoting *Odyssey Partners v. Fleming Co.,* 1998 WL 155543, at *1 (Del. Ch. Mar. 27, 1998)) (emphasis added).

[73]  *Cf. Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) ("the law of the case doctrine is not inflexible in that, unlike *res judicata,* it is not an *absolute* bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."); *see also May*, 838 A.2d at 288 n.8 ("The court agrees and will not allow this issue to be relitigated. The 'law of the case' doctrine requires that issues already decided by the same court should be adopted without relitigation, and 'once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not

-17-

supply a shortcut for AIG to import the Court's prior limited damages determination in *Hartree v. PAA* into this case.

Viewed together, both arguments depend on treating the PAA trial as if it established portable, binding determinations that Hartree must now live with. But neither waiver nor the rule AIG invokes has that kind of reach. The doctrines may be framed differently, but they run into the same obstacle: each requires a continuity of litigation that simply does not exist here. Consequently, neither theory bars Hartree's alternative damages claim.

## B. THERE ARE MATERIAL FACTUAL DISPUTES REGARDING APPLICABILITY AND APPLICATION OF KEY POLICY TERMS.

At this stage, the record doesn't permit resolution of the contested issues as a matter of law. Summary judgment is proper only where the material facts are undisputed; it is not a vehicle for the Court to decide whose version of events is more credible.[74] Yet on the questions of the actual damages Hartree may have suffered, whether subrogation rights were waived or impaired, and whether Hartree undertook the mitigation required by the policy, the parties present accounts that diverge in

---

be disturbed by that court unless compelling reason to do so appears.'") (quoting *Odyssey Partners,* 1998 WL 155543, at *1); *see generally Hamilton v. State,* 831 A.2d 881, 887−89 (Del. 2003) ("The law of the case doctrine is not intended to preserve error or injustice.").

[74] *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 118 (Del. Super. Ct. 2014) ("The Court should not grant summary judgment where, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances.") (cleaned up).

ways that matter. The record itself—as well as the parties' descriptions of AIG's communications, Hartree's litigation decisions in the PAA trial, and the extent of any mitigation efforts—differ sharply. And those differences bear directly on the application of the policy provisions at issue.

Because these factual disputes remain unresolved—and because their resolution turns on the intent of the parties, the significance of periods of silence, and the credibility of witnesses—the Court cannot determine as a matter of law whether the policy's subrogation or mitigation provisions were satisfied or breached. The Court therefore addresses each area of dispute below, mindful that these issues ultimately must be resolved by a finder of fact.

**1. There are material factual disputes regarding the application of the subrogation clause.**

At this stage, it's unclear whether any party waived its subrogation rights. Lumped in with AIG's waiver argument is discussion of subrogation under the insurance policy.[75] Subrogation rights are defined as

> [For] cases of Fraud by a Seller Party in connection with the Acquisition Agreement and the transactions contemplated thereby . . . [i]n no event (including, for the avoidance of doubt, prior to payment of Loss under this Policy) shall the Insureds knowingly and intentionally waive any rights [of the Insurer] in a manner that would reasonably be expected to actually prejudice any such subrogation or assignment right.[76]

---

[75]  AIG's MSJ Opening Br., at 28−30.

[76]  Euclid Primary Policy § VIII(B)(i).

and

> Sections V through VIII of this Policy [VIII. MITIGATION; SUBROGATION; REIMBURSEMENT; OTHER INSURANCE] shall not relieve the Insurers of their obligations under this Policy except to the extent to which the Insurers are actually and materially prejudiced thereby.[77]

AIG claims that Hartree, by dropping the alternative damages theory, waived AIG's subrogation rights, which violated the primary policy and prejudiced AIG.[78] In response, Hartree claims that AIG waived its own right to subrogation by "repudiating coverage and denying all liability for Hartree's losses for over three years."[79]

Both parties' compliance with the subrogation provision is a genuine and material dispute of fact. Hartree claims that AIG was silent for over nine months[80] while AIG references its communication:

> Hartree is free to act, or to settle with the Seller, in the Fraud Litigation. What Hartree cannot do is impair AIG Specialty's subrogation rights without AIG Specialty's consent. We disagree with your position that there has been a waiver—particularly where the amount of Hartree's damages with respect to the AIG Specialty excess policy currently is unclear. As you know, Hartree has asserted in this litigation that the amount of damages at issue is "not susceptible to a definitive number" at this time.[81]

---

[77] *Id.* § XIV.

[78] AIG's MSJ Opening Br., at 28−30.

[79] Hartree's Answering Br., at 16 (internal citation and quotation omitted) (cleaned up).

[80] *Id.* at 17.

[81] AIG Reply Br., at 13 (quoting AIG Coverage Emails at 4).

There is also material dispute as to whether Hartree "knowingly and intentionally waive[d] any rights [of the Insurer] in a manner that would reasonably be expected to actually prejudice."[82] While Hartree did drop the alternative damages theory in the middle of trial against PAA, it is unclear as to why.[83] AIG alleges that Hartree's motive was to gain an advantage in this case,[84] but that is a disputed factual question that relies heavily on witness credibility. As such, it is proper for a jury to determine if Hartree's mid-trial change in strategy was "knowingly and intentionally" done to disadvantage its insurers.[85]

## 2. There are material factual disputes regarding Hartree's mitigation efforts.

It is unknown to the Court at this time whether Hartree took proper mitigative measures. The policy has a mitigation clause that states:

> To the extent required by applicable law, *the Insureds shall use commercially reasonable efforts within their control, including, to the extent commercially reasonable*, making requests or demands of third parties, *to mitigate any Loss or potential Loss after any Specified Person has Actual Knowledge of any event which would reasonably be expected to give rise to any Loss*;

---

[82] *See* Euclid Primary Policy § VIII(B)(i).

[83] *See, e.g.*, May 13 Trial Tr. at 56.

[84] AIG Reply Br., at 9, 19 (D.I. 339).

[85] *See Cercacor Laboratories, Inc. v. Metonom Health, Inc.*, 2025 WL 1180186, at *14 (Del. Super. Ct. Apr. 23, 2025) ("[A]s well-understood, the Court, on summary judgment, cannot weigh [ ] conflicting evidence or make credibility determinations."); *id.* at 4 ("In determining whether a material factual dispute exists, the Court 'is not permitted to weigh the evidence or resolve conflicts presented by the pretrial discovery.'") (quoting *Texlon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)); *see also Cuonzo v. Shore*, 958 A.2d 840, 845 (Del. 2008) ("The jury weighs the credibility of the witnesses in addition to weighing the evidence.") (citation omitted).

provided that the failure of any Insured to so mitigate shall only reduce the rights of the Insureds to recover for Loss under this Policy to the extent of the Loss that would have been avoided by such mitigation, and the burden of proving such amount shall be on the Insurers and shall not otherwise diminish or delay coverage or payment hereunder; provided further, that, except as provided in Section VIII.B in connection with the subrogation rights of the Insurers, the Insureds shall not be required or obligated to seek recovery or recourse under the Acquisition Agreement or otherwise from Seller or any of its direct or indirect equityholders or Affiliates or any other person [86]

AIG says the Court's PAA trial decision evidences that "the commercial reasonableness of Hartree's efforts regarding Replacement Gas Costs was litigated."[87] True enough. But this doesn't resolve the issue remaining here, because the Court neither evaluated nor passed on any mitigation efforts regarding the alleged overall overpayment for the Pine Prairie facility. That is undecided. Accordingly, there are still material disputes of fact and summary judgment isn't appropriate.[88]

---

[86] Euclid Primary Policy at § VIII(A) (emphasis added).

[87] AIG Reply Br., at 2.

[88] *Radulski*, 2020 WL 8676027, at *3 ("This Court cannot grant any party's motion for summary judgment under Delaware Superior Court Civil Rule 56 unless no genuine issue of material fact exists and that party is entitled to judgment as a matter of law.").

## V. CONCLUSION

For the foregoing reasons, Defendant AIG Specialty's Motion for Summary Judgment (D.I. 335) is **DENIED.**

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*

_____

Paul R. Wallace, Judge